GRACE S. BAILEY, Indiv. and as Ex'x of the Estate of Weldon J. Bailey, Deceased, Plaintiff-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.

Fourth District No. 4—93—0992

Argued May 25, 1994.—Opinion filed August 31, 1994.—Rehearing denied December 23, 1994.

Evan A. Strawn (argued), of Bloomington, for appellant.

Stephen W. Thomson (argued), of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Grace Bailey, appeals from the order of the circuit court of McLean County granting the motion of State Farm Fire and Casualty Company (State Farm) for judgment on the pleadings. She alleges the trial court erred in determining the umbrella policy she purchased from State Farm clearly and unambiguously provided the excess uninsured motorist insurance would be reduced by the amount of other insurance received. We disagree and affirm.

In 1979, Grace and Weldon Bailey owned four automobile insurance policies, each of which insured one of their four automobiles. These policies were issued by State Farm and had been sold to the Baileys by State Farm agent Tom Metzger. The policies were in effect over a six-month period and were renewed semiannually on March 21 and September 21.

On September 21, 1979, the Baileys renewed their four automobile insurance policies. At this time each automobile insurance policy provided for uninsured motorist (UM) coverage of $10,000. Also on September 21, 1979, Metzger sold the Baileys a "Success Protector Policy," which is in the nature of an umbrella policy. In order to be eligible to purchase the umbrella policy, the Baileys were required to own underlying (primary) insurance. The four automobile policies constituted underlying insurance to the umbrella policy. The umbrella policy provided $1 million personal liability coverage and $35,000 UM coverage. The umbrella policy was in effect for a 12-month period and could be renewed annually on September 21.

On March 21, 1980, while the umbrella policy was still in effect, the Baileys renewed their four automobile insurance policies. At this time, they increased the UM coverage on two of the policies to $100,000 each. The UM coverage on the other two policies remained at $10,000 each. Thus, the Baileys had a total of $220,000 UM coverage pursuant to their four primary automobile insurance policies.

The coverages section of the umbrella policy provides:

"COVERAGES

* * *

2. COVERAGE U: UNINSURED MOTORISTS

This Company will pay all sums up to $35,000, less the amount of the Retained Limit-Coverage U, which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile or an underinsured automobile, provided:

(a) this Company's liability hereunder shall be only in excess of the Retained Limit-Coverage U, and

(b) coverage hereunder for loss involving such uninsured or underinsured automobile shall apply only in accordance with the terms and conditions of underlying Uninsured Motorists insurance afforded to the Insured at the time of loss, or in the absence thereof, Uninsured Motorists insurance afforded to the Insured as of the effective date of this policy.

EXCLUSION

This insurance does not apply, as respects Coverage U:

(a) to loss occurring at any time during which the Insured is not afforded underlying Uninsured Motorists insurance by reason of the Insured's voluntary rejection thereof."

The definition of the "retained limits" with respect to the UM coverage is as follows:

"Retained Limit-Coverage U: The greater of:

(1) the total amount of insurance payable to the Insured under other Uninsured Motorist, Underinsured Motorist or automobile liability insurance; or

(2) the minimum amount specified by the financial responsibility law of the state in which the accident shall occur."

On April 21, 1980, Weldon was fatally injured when the bicycle he rode was struck by a pickup truck. The pickup truck was owned and operated by an UM.

In December 1980, Grace filed a complaint for declaratory judgment in the circuit court of Madison County, alleging State Farm failed to offer UM coverage in an amount equal to the personal liability coverage of the umbrella policy, in violation of section 143a of the Illinois Insurance Code (Code), as amended. (Ill. Rev. Stat. 1979, ch. 73, par. 755a.) The suit was voluntarily dismissed over State Farm's objection. The dismissal was affirmed by the Fifth District Appellate Court. *Bailey v. State Farm Fire & Casualty Co.* (1985), 137 Ill. App. 3d 155, 484 N.E.2d 522.

Grace then filed suit in the circuit court of Peoria County. On May 30, 1986, Grace filed a first-amended complaint predicated upon an alleged duty of State Farm to offer additional amounts of UM coverage in the umbrella policy. The complaint contained allegations of unjust enrichment, violation of section 143a of the Code, negligence, breach of insurer's duty of good faith and fair dealing, breach of fiduciary duty, common law fraud, and breach of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*). State Farm filed a motion for judgment on the pleadings or to dismiss. The motion for judgment on the pleadings was granted and was affirmed by the Third District Appellate Court. *Bailey v. State Farm Fire & Casualty Co.* (1987), 156 Ill. App. 3d 979, 509 N.E.2d 1064.

On March 1, 1988, Grace filed a complaint for declaratory judgment in the circuit court of McLean County. She alleged State Farm contended the UM coverage of the umbrella policy is only available to the extent the coverage of the underlying policies or other available insurance does not exceed $35,000. In this event, State Farm will, pursuant to the umbrella policy, pay the difference between the amount of coverage provided by other insurance, and $35,000. Since the UM coverage of the underlying policies was $220,000, State Farm contended it was obligated to pay nothing under the umbrella policy.

State Farm filed a motion to dismiss alleging the matters had already been litigated in the Peoria County suit and Grace's action was barred by *res judicata*. State Farm's motion was denied. State Farm's

petition to appeal was granted, and this court affirmed the order of the circuit court. *Bailey v. State Farm Fire & Casualty Co.* (1991), 208 Ill. App. 3d 964, 567 N.E.2d 712.

The McLean County proceedings continued. Grace filed a motion for summary judgment and State Farm filed a motion for judgment on the pleadings. The trial court found, under the terms of the umbrella policy, State Farm had no liability under the UM coverage provision where the insured received proceeds *in excess* of $35,000 from other insurance policies. Accordingly, the court granted State Farm's motion for judgment on the pleadings. Grace appeals from this order.

The "Success Protector Policy" issued by State Farm to the Baileys is in the nature of an umbrella policy as it provides some primary personal liability coverage, as well as excess personal liability and excess UM coverage. The portion of the policy which is at issue in this appeal is the excess UM coverage.

Primary insurance coverage is insurance coverage which attaches immediately upon the happening of the occurrence that gives rise to the liability. Excess or secondary insurance coverage is coverage under which liability attaches only after a predetermined amount of primary coverage has been exhausted. *Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 764, 442 N.E.2d 1362, 1366.

"Excess" insurance is insurance issued to an insured who already owns primary, or underlying, insurance. The purpose of excess insurance is to protect the insured from "catastrophic loss," *e.g.*, loss in excess of the coverage provided by the underlying insurance. The excess insurance is not available until the primary insurance has been exhausted. Since, in the present case, Grace has primary insurance of $220,000, coverage under the excess insurance clause is not available unless her damages exceed $220,000.

Excess insurance has been explained as insurance providing for coverage in the amount of total damages incurred, less the amount of other insurance received, up to the limits of the excess insurance policy. (See R. Mehr & E. Cammack, Principles of Insurance 200 (1980).) Thus, under the traditional "excess" clause, the coverage provided by the excess clause is received *in addition to* the proceeds received on the underlying policies. This is often referred to as "stacking." However, a few insurers have departed from the traditional excess clauses and have provided for coverage, under the excess clause, only to the extent that the policy limit of the excess clause exceeds the policy limits of the underlying policies. (See R. Mehr & E. Hedges, Risk Management Concepts & Applications 505 (1974).) Under the latter type of policy, the excess coverage may not be stacked with the

coverage provided by other insurance. Thus, the primary insurance is used twice in the determination of whether excess coverage is available. In addition to being a *threshold* amount which must be exceeded before the excess coverage may be invoked, the primary insurance must *also* be *subtracted* from the policy limit of the excess insurance clause in order to determine the amount of coverage afforded by the excess insurance clause. If the primary insurance is greater than the policy limit of the excess clause, no excess coverage is provided.

The issue in the present case is whether State Farm has unambiguously created an excess clause which provides the excess insurance is only available to the extent the policy limit of the excess policy exceeds the other insurance. The excess insurance clause of the umbrella policy provides State Farm will pay "all sums up to $35,000, less the amount of the Retained Limit-Coverage U." The "Retained Limit-Coverage U" is defined by the policy as the greater of the amount of other insurance or the minimum amount specified under the financial responsibility law. At all pertinent times, the minimum amount specified under the financial responsibility law was $10,000. Thus, State Farm promised to pay "all sums up to $35,000, less the [greater of the other insurance received or $10,000]." Since, in the present case, the amount of other insurance received ($220,000) is greater than the minimum amount specified by the financial responsibility law ($10,000), the "Retained Limit-Coverage U" is the amount of other insurance received ($220,000).

The phrase "less the amount of the Retained Limit-Coverage U" evidently modifies an earlier portion of the sentence. In other words, the "Retained Limit-Coverage U" (other insurance) must be subtracted from something. Grace contends the insurance policy is ambiguous as it is unclear whether the "Retained Limit-Coverage U" modifies (is to be subtracted from) "all sums" (*e.g.*, the amount of the damages), or from "$35,000," the limit of the excess coverage.

As Grace correctly notes, an insurance policy is ambiguous if it is subject to more than one reasonable interpretation. (*Schweighart v. Country Mutual Insurance Co.* (1984), 122 Ill. App. 3d 40, 42, 460 N.E.2d 89, 90.) However, the touchstone in determining whether an insurance policy is ambiguous is whether the relevant portion is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. (*Bruder v. Country Mutual Insurance Co.* (1993), 156 Ill. 2d 179, 193, 620 N.E.2d 355, 362.) While we agree State Farm's policy could have been more clearly written, an examination of the policy as a whole indicates State Farm's interpretation of the policy is the only reasonable interpretation.

We agree the language in which State Farm promises to pay "all sums up to $35,000, less the amount of the Retained Limit-Coverage U" is not as straightforward as language which has previously been interpreted to clearly and unambiguously limit coverage to the extent the amount of insurance provided by one policy exceeds the insurance provided by other policies.

For example, in *Bruder* (156 Ill. 2d at 186, 620 N.E.2d at 359), the supreme court reviewed the construction of the language:

" 'If this policy and any other vehicle insurance policy issued to you by this Company apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy.' "

The court determined the policy unambiguously precluded the aggregation of coverage provided by that policy with any other policy issued by the same company. *Bruder*, 156 Ill. 2d at 186-87, 620 N.E.2d at 359.

Similarly, in *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423, 401 N.E.2d 539, 541, the supreme court reviewed the construction of clauses which appeared in three separate policies issued by the same insurer to an insured. In each policy a clause provided:

" 'With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the Named Insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.' " (*Menke*, 78 Ill. 2d at 423, 401 N.E.2d at 541.)

Each of the insured's three automobile policies provided for $10,000 uninsured motorist coverage; the insured claimed entitlement to recovery of $10,000 on each of the policies, for a total of $30,000. The court, with one justice dissenting, found the policy clearly and unambiguously limited recovery to $10,000, the " 'highest applicable limit of *** under any one.' " *Menke*, 78 Ill. 2d at 424, 401 N.E.2d at 541.

Likewise, in *Makela v. State Farm Mutual Automobile Insurance Co.* (1986), 147 Ill. App. 3d 38, 51, 497 N.E.2d 483, 491-92, the first district rejected an argument that the language of a policy was ambiguous. The policy provided:

" '[T]he limit of uninsured motorist insurance shown on the Declaration Page for "each person" is the maximum we'll pay in Damages for bodily injury to any one person *** [e]ven though You may have more than one car insured with us and separate premiums are charged for each car, the most we will pay for any one accident is the amount shown on the Declaration Page. When Damages are payable under more than one policy we've issued to

You, we won't pay more than the highest limit in any one such policy.' " (*Makela*, 147 Ill. App. 3d at 51, 497 N.E.2d at 491-92.) The court found this clause clearly stated, in the event of the applicability of multiple policies, recovery was limited to the highest limit of a single policy. *Makela*, 147 Ill. App. 3d at 51, 497 N.E.2d at 492.

The language of State Farm's excess clause, which provides State Farm will pay "all sums up to $35,000, less the amount of the Retained Limit-Coverage U" lacks the clarity and specificity of the language deemed by the supreme court to be clear and unambiguous in *Bruder* (156 Ill. 2d at 186, 620 N.E.2d at 359 (" 'the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy' ")) or *Menke* (78 Ill. 2d at 423, 401 N.E.2d at 541 (" 'the total limit of the Company's liability *** shall not exceed the highest applicable limit of liability or benefit amount under any one such policy' ")). Most notable is the absence, in the policy issued to the Baileys, of the clear language which State Farm used in the policy construed by the court in *Makela* (147 Ill. App. 3d at 51, 497 N.E.2d at 492 (" 'When Damages are payable under more than one policy we've issued to You, we won't pay more than the highest limit in any one such policy' ")).

We are also aware an excess clause virtually identical to that of State Farm was found to be ambiguous by the Federal Court of Appeals for the Third Circuit in *O'Hanlon v. Hartford Accident & Indemnity Co.* (3d Cir. 1981), 639 F.2d 1019. In *O'Hanlon*, the insured received "other insurance" in the amount of $75,000. An umbrella policy provided for excess UM coverage in the amount of $35,000. The insurer argued, as State Farm argues in the present case, that the excess insurance clause required the other insurance to be deducted from the $35,000 policy limit, with the result that the insurer would only be liable for the difference. Where the amount of other insurance received is greater than $35,000, the insurer would have no liability under the umbrella policy. The insured contended, as Grace contends in the present case, that the amount of other insurance must be deducted from the amount of total damages sustained, and the insurer is obligated to pay the amount of uncompensated damages up to the policy limit of $35,000. *O'Hanlon*, 639 F.2d at 1027.

The court found one cannot read the UM provisions of the policy without reaching the conclusion the insurer is promising to pay, under some circumstances, up to $35,000 in UM coverage. Yet, under the construction advocated by the insurer, there would be *no* circumstances in which the insurer would ever be obligated to pay $35,000.

This is because the insurer contended the greater of other insurance received or $10,000, the minimum amount specified under the financial responsibility law, must always be subtracted from the policy limit of $35,000. Thus, the insurer would never be obligated to pay more than $25,000 ($35,000 minus $10,000). *O'Hanlon*, 639 F.2d at 1027-28.

The court additionally rejected the insurer's argument that the application of grammatical rules of construction would support the deduction of other insurance from the $35,000 policy limit. Rather, the court found that in the phrase "all sums up to $35,000 less the amount of the RETAINED LIMIT" (see *O'Hanlon*, 639 F.2d at 1021 n.3), both "$35,000" and "less the amount of the RETAINED LIMIT" modified the words "all sums." (See *O'Hanlon*, 639 F.2d at 1027-28.) The court concluded "[t]o put it another way, we read $35,000 as a parenthetical description and, if this is done, it is clear that both the mention of the sum of $35,000 and the phrase 'less the retained limit' modify the words 'all sums'." *O'Hanlon*, 639 F.2d at 1028.

We agree with State Farm's contention this construction is unreasonable and results in rewriting the policy "by resorting to strained and labored construction in order that plaintiff may recover."

Initially, we are unable to find, as did the *O'Hanlon* court, that "[o]ne cannot read the [UM] provisions of the umbrella policy without coming to the conclusion that [the insurer] is promising to pay, under some circumstances, up to $35,000 in [UM] coverage." (*O'Hanlon*, 639 F.2d at 1027-28.) Rather, we find the language in which the insurer promises to pay "all sums up to $35,000, less the amount of the Retained Limit-Coverage U," unambiguously operates as a promise to pay up to $35,000 with a deduction for the amount of "Retained Limit-Coverage U."

This conclusion is reinforced by an examination of the language used on the declarations page of the policy. An insurance contract, like any other contract, is to be interpreted from an examination of the complete document, and not by examination of an isolated part. (*Cobbins v. General Accident Fire & Life Assurance Corp., Ltd.* (1972), 53 Ill. 2d 285, 290, 290 N.E.2d 873, 876.) On the declarations page of the policy, UM coverage is described as "COVERAGE U. UNINSURED MOTORISTS $35,000 LESS THE RETAINED LIMIT-COVERAGE U AS DEFINED." This language also indicates coverage is in the amount of $35,000, with a deduction for the amount specified in the definition of "Retained Limits-Coverage U."

We are also unwilling to accept the reasoning of the *O'Hanlon* court that in the phrase "all sums up to $35,000 less the amount of

the RETAINED LIMIT" (see *O'Hanlon*, 639 F.2d at 1021 n.3), both "$35,000" and "less the amount of the RETAINED LIMIT" modify the words "all sums" (see *O'Hanlon*, 639 F.2d at 1027-28), since to do so would require us to insert parentheses around the amount of "$35,000." Just as the court may not rewrite the contract of the parties by altering the language used by the parties, the court may not change the meaning of the contract by inserting punctuation which was not selected by the parties.

Grace next contends the requirement of a subtraction of "other insurance" from either the total damages or policy limits, depending on which interpretation is adopted, does not require the subtraction of proceeds received from the *underlying* insurance. She claims "other Uninsured Motorist" insurance set forth in the "Retained Limit-Coverage U" does not include underlying UM insurance.

We disagree with Grace's contention. If the amount of underlying insurance is not subtracted from the total damages incurred, the insured could recover, under the excess policy, for damages which had already been compensated by the proceeds of the underlying insurance. This would be inconsistent with the nature of an excess policy, which is to provide coverage only to the extent the insured suffers catastrophic losses which are *uncompensated* by primary insurance policies.

In conclusion, we find the policy is not ambiguous. Rather, the only reasonable interpretation of the policy is the policy provided maximum coverage of $35,000 with a reduction for other insurance received. "Other insurance" is inclusive of the proceeds received pursuant to the underlying (primary) policies. Since Grace received other insurance of $220,000, she is not entitled to recovery under the excess UM clause of the umbrella policy.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.