JOHN M. STEINBERG, as Adm'r of the Estate of Mary J. Steinberg, Deceased, and as Ex'r of the Estates of Margaret I. Steinberg, Deceased, and Virgil J. Steinberg, Deceased, Plaintiff-Appellee, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—94—0559

Argued January 18, 1995.—Opinion filed May 3, 1995.

COOK, J., dissenting.

Jay S. Judge (argued), Peter T. Sinnott, and Kristine A. Karlin, all of Judge & James, Ltd., of Park Ridge, and Kevin J. Davlin, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

Rick Verticchio (argued), of Verticchio & Verticchio, of Gillespie, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff John Steinberg sought a declaratory judgment of the rights and liabilities of the parties concerning a $100,000/$300,000 garage policy issued by Universal Underwriters Insurance Company (Universal) to Honda of Illinois, Inc. (Honda). The issue is whether the garage policy affords coverage to Timothy Massey, an insured

driver who was involved in an accident with plaintiff's decedents while test driving an automobile owned by Honda. We find Massey is not "an INSURED" under Universal's garage policy and reverse and remand with directions.

On August 19, 1990, while driving an automobile owned by Honda, Massey was involved in a collision with plaintiff's three decedents. At the time of the accident, Massey was covered by his mother's personal automobile insurance policy with State Farm which satisfied the minimum coverage limits of $20,000/$40,000 under the mandatory insurance provision of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 7—601). It is undisputed Massey and the vehicle are covered under the State Farm policy. However, in a second-amended complaint, plaintiff sought coverage for Massey's negligent operation of Honda's automobile under the garage policy and judgment against Universal. Plaintiff filed a motion for summary judgment contending coverage of Massey exists as a matter of law under the garage policy. Universal filed a cross-motion for summary judgment claiming Massey is not "an INSURED" under the garage policy. The circuit court disagreed with Universal and granted plaintiff's motion for summary judgment. Universal appeals.

■ The interpretation of an insurance policy is a question of law properly decided on a motion for summary judgment. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212.) As a question of law, our review of the circuit court's granting a summary judgment is *de novo. Outboard Marine Corp.*, 154 Ill. 2d at 102, 607 N.E.2d at 1209.

To determine whether Massey is covered under Universal's garage policy, we must look to the policy language:

"WHO IS AN INSURED
With respect to the AUTO HAZARD:
1. YOU;
2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;
3. Any other person or organization *required by law to be an INSURED* while using an AUTO covered by this Coverage Part within the scope of YOUR permission." (Emphasis added.)

Clearly, Massey does not fall within the scope of paragraph one or two. The issue then is whether Massey is a person "required by law to be an INSURED" under paragraph three of the garage policy.

■ The circuit court, relying on *Madison Mutual Insurance Co. v. Universal Underwriters Group* (1993), 251 Ill. App. 3d 13, 621 N.E.2d 270, *appeal denied* (1994), 154 Ill. 2d 561, held Massey is a person "required by law to be an INSURED." In *Madison Mutual*, the Fifth District Appellate Court interpreted identical language in a garage policy. The court held the phrase "required by law to be an INSURED" resulted in insurance coverage for the operator of a loaner vehicle, who already had coverage under his father's automobile policy, pursuant to section 7—601 of the Code, even though the mandatory insurance provision does not explain whether the owner or the operator of the automobile is required to provide that insurance. (*Madison Mutual*, 251 Ill. App. 3d at 16, 621 N.E.2d at 272.) Section 7—601 provides: "[N]o person shall operate *** and no owner shall permit another person to operate *** a motor vehicle *** unless the motor vehicle is covered by a liability insurance policy." (Ill. Rev. Stat. 1989, ch. 95¹/₂, par. 7—601.) Bound by *Madison Mutual*, the circuit court held Massey, as an operator of Honda's vehicle, is also "required by law to be an INSURED" pursuant to the Code.

Universal concedes in States with laws requiring car dealers to provide permissive users of automobiles with insurance, said operators are persons "required by law to be an INSURED." However, such a law does not exist in Illinois. While the Code provides that no one may operate a vehicle unless the *vehicle* is covered by insurance, it does not necessarily require vehicle owners to provide coverage for operators. Where the Illinois legislature has desired vehicle owners to provide insurance for permissive vehicle users, it has specifically stated so by statute, such as the car rental provision of the Code (Ill. Rev. Stat. 1989, ch. 95¹/₂, par. 9—105) and the taxicab owners provisions (Ill. Rev. Stat. 1989, ch. 95¹/₂, pars. 8—108, 8—109), both of which require permissive users of rental cars and taxicabs to be covered by the owners' insurance. However, Illinois has no statute requiring car dealers to provide insurance coverage for customers or permissive users. Absent such a statute, Massey is not "required by law to be an INSURED" under Universal's garage policy.

■ Universal also argues since Massey was already insured by State Farm at the time of the accident, he is not a person "required by law to be an INSURED" under the garage policy. The court in *Madison Mutual* rejected a similar argument stating:

"The third definition of insured in the Universal policy makes no mention of whether the person required by law to be insured has insurance coverage under a separate policy. Whether or not a person is insured under a separate policy when he or she borrows

a car from [a car dealer] is of no consequence in determining whether he or she is 'required by law' to have insurance under Universal's definition of insured." (*Madison Mutual*, 251 Ill. App. 3d at 16, 621 N.E.2d at 272-73.)

We reject the *Madison Mutual* analysis and find the garage policy was intended to cover only uninsured or underinsured customers, those otherwise "required by law to be an INSURED." (See *Springfield Fire & Casualty Co. v. Garner* (1993), 255 Ill. App. 3d 685, 627 N.E.2d 1147.) Accordingly, Massey, as a permissive user with personal insurance coverage sufficient to comply with the Code, is not "an INSURED" under the garage policy. Had Massey been an uninsured or an underinsured motorist, Universal's garage policy would have triggered liability coverage in the amount required to comply with the minimum limits of the Code. However, since Massey's State Farm policy did insure the vehicle up to the minimum limits of the Code, Universal's garage policy was not called into play.

This conclusion is further supported by Universal's policy provision entitled "THE MOST WE WILL PAY," which provides:

"With respect to persons or organizations required by law to be an INSURED, the most WE will pay is *that portion of such limit needed to comply with the minimum limits provision of such law* in the jurisdiction where the OCCURRENCE took place. WE will pay only the amount needed to comply with such minimum limits *after such other insurance has been exhausted*." (Emphasis added.)

Universal has unambiguously created an excess clause which provides excess coverage is not available until the primary insurance has been exhausted. Excess insurance is secondary insurance coverage which attaches only after a predetermined amount of primary coverage has been exhausted. (*Bailey v. State Farm Fire & Casualty Co.* (1994), 267 Ill. App. 3d 653, 656, 642 N.E.2d 1323, 1326.) Under the Code, the predetermined amount of primary liability coverage required is $20,000/$40,000. Massey's personal automobile insurance policy with State Farm satisfies those limits. Therefore, coverage under Universal's garage policy is not available to Massey.

We hold Massey is not a person "required by law to be an INSURED" as defined in the garage policy. Had we found Massey to be "an INSURED," we would still reverse to the extent of liability coverage imposed by the circuit court. Were the $100,000/$300,000 limits to be extended to all customers or permissive users such as Massey, the garage policy would have read "up to the limits of this policy," rather than up to "the minimum limits provision of [Illinois]." In this instance, the minimum limits provision set forth in section 7—601 of the Code is $20,000/$40,000, not $100,000/$300,000 as provided in Universal's policy and awarded by the circuit court.

■ We also reject the *Madison Mutual* view that Universal shall be the primary insurer of any judgment rendered against permissive users. There is no Illinois law which requires mandatory primary liability coverage under the facts in this case. Nor is there anything in the insurance contract between Universal and Honda which requires a judgment against a test driver or permissive user must be first satisfied by Universal. Accordingly, we reverse and remand with directions to vacate summary judgment in favor of plaintiff and grant summary judgment in favor of Universal.

Reversed and remanded with directions.

LUND, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent, although I agree that the policy limits are only $20,000/$40,000.

In *Madison Mutual*, the court relied on the language of the policy to decide the question we consider. The garage liability policy there, like ours, defined an insured to be "any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission." If a person is "required by law" to be an insured, it does not make any difference, for purposes of the definition, whether that requirement is satisfied by Universal's garage liability policy or by some preexisting coverage. (*Madison Mutual*, 251 Ill. App. 3d at 16, 621 N.E.2d at 272-73.) I agree with *Madison Mutual* that someone in the position of Massey is required by law to be insured and accordingly is an insured under the garage liability policy.

*Madison Mutual* indicated it was not clear, under the Illinois mandatory insurance law, whether it is the operator or the owner that must provide the mandatory insurance. (*Madison Mutual*, 251 Ill. App. 3d at 16, 621 N.E.2d at 272.) It is clear to me, however, that under the mandatory insurance law the owner of a vehicle must provide insurance coverage. The statute provides that no person shall register or maintain registration of a motor vehicle "unless the motor vehicle is covered by a liability insurance policy." (625 ILCS 5/7—601(a) (West 1992).) The statute does not indicate that a policy covering the driver is sufficient, it states that the *motor vehicle* must be covered by a policy. There is a difference between a policy which insures certain vehicles and those who operate them, and a policy which insures certain drivers and the vehicles they operate. The uninsured owner of a vehicle cannot protect himself from liability under the mandatory insurance law by allowing the vehicle to be operated

only by drivers who have their own insurance. The mere registration of an uninsured vehicle, even one which is never used, violates the law. The Secretary of State may enforce the mandatory insurance law by random registration checks and by requests that owners furnish proof of insurance. (625 ILCS 5/7—601(a) (West 1992).) Insurance cards must be issued by the insurer for each motor vehicle insured, and if the policy does not cover any driver operating the vehicle with the owner's permission, the insurance card shall contain a warning. (625 ILCS 5/7—602 (West 1992).) Probably an insured driver operating an otherwise uninsured vehicle is not subject to penalty under section 3—707 of the Code (625 ILCS 5/3—707 (West 1992)), but the owner is in violation and his registration could be suspended under section 7—606 (625 ILCS 5/7—606 (West 1992)). See Meacham & Andersen, *Illinois' Mandatory Insurance Law*, 78 Ill. B.J. 298, 301 (1990).

The requirement that an owner maintain insurance covering the vehicle is consistent with the policy behind the mandatory insurance law. The law did not intend a situation where sometimes there might not be coverage. An owner can be certain of his own coverage and that his vehicle is specifically listed on his policy. It should not be a defense for an uninsured owner that the driver had his own insurance, a fact over which the owner has little direct control. Insurance on the vehicle is superior to insurance on the driver, because insurance on the vehicle will generally cover other drivers using the vehicle with the permission of the owner. (See 625 ILCS 5/7—317(b)(2) (West 1992).) Because Honda was required to have insurance under the mandatory insurance law, and because Honda was prohibited from permitting Massey to use its vehicle unless the vehicle was covered by a liability insurance policy, I would hold that Massey was "required by law to be an INSURED," despite the fact that other coverage was available to Massey.

The majority opinion holds the Universal garage liability policy to be excess over the State Farm policy. I do not understand how we can say that without considering the language of the State Farm policy. The State Farm policy contains language that *it* is only excess: "If *** a non-owned car *** has other vehicle liability coverage on it, then this coverage is excess." The parties do not discuss the issue in their briefs, but I would expect the garage liability policy to be primary. The trial court so held in *Madison Mutual*, and that seems to be the general rule. (*Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.* (1971), 49 Ill. 2d 108, 112, 273 N.E.2d 360, 362-63; *International Insurance Co. v. Sentry Insurance* (1977), 45 Ill. App. 3d 634, 359 N.E.2d 1219.) Garage liability insurers seem to be contin-

ually changing their policies to avoid that result, but the supreme court has not been sympathetic to those efforts. *Automobile Underwriters*, 49 Ill. 2d at 112, 273 N.E.2d at 362-63 (mere inclusion of phrase "either primary or excess" in the "escape" clause insufficient).

If the garage liability policy is primary, then that policy must pay its full limits before the excess policy is involved. The garage liability policy accordingly cannot benefit from payments which will be made under the excess policy. However, I agree with the dissenting opinion in *International Insurance* that the policy language ("THE MOST WE SHALL PAY") "discloses a scheme of coverage" that the garage liability insurer shall pay no more than the amounts required by the mandatory insurance law, $20,000/$40,000. *International Insurance*, 45 Ill. App. 3d at 638, 359 N.E.2d at 1222 (Trapp, J., dissenting); see also *Guaranty National Insurance Co. v. Koch* (1993), 242 Ill. App. 3d 692, 611 N.E.2d 91; *Springfield Fire & Casualty Co. v. Garner* (1993), 255 Ill. App. 3d 685, 627 N.E.2d 1147.

Accordingly, I would affirm that portion of the trial court's decision which found that Massey was covered by Universal's garage liability policy, but would remand with instructions to find that the limits of the policy are $20,000/$40,000.