No. 2--95--1360                              

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

STATE FARM MUTUAL AUTOMOBILE    )  Appeal from the Circuit Court

INSURANCE COMPANY, as Subrogee  )  of Du Page County.

of Rodney Luckhart,             )

                                )

     Plaintiff-Appellee,        )  No. 95--AR--0161

                                )   

v.                              )

                                )

UNIVERSAL UNDERWRITERS GROUP,   )

                                )

     Defendant-Appellant        ) 

                                ) 

(Joyce Pontiac GMC, Jeep-Eagle  ) 

and Toyota, Inc., assumed name  )  Honorable

of Northern Illinois Auto       )  Joseph S. Bongiorno,

Center, Defendant).             )  Judge, Presiding.

_________________________________________________________________

     JUSTICE HUTCHINSON delivered the opinion of the court:

     Plaintiff, State Farm Mutual Automobile Insurance Company

(State Farm), as subrogee of Rodney Luckhart, commenced this action

by filing a complaint for breach of contract against defendants,

Joyce Pontiac GMC, Jeep-Eagle, and Toyota, Inc. (Joyce Pontiac GMC)

and Universal Underwriters Group (Universal).  Plaintiff seeks

recovery of $9,092.15 it paid out for claims made against its

insured, Rodney Luckhart.  

     At issue in this insurance coverage dispute is whether

Steinberg v. Universal Underwriters Insurance Co., 272 Ill. App. 3d

79 (4th Dist. 1995) (holding that a permissive user with personal

insurance coverage in compliance with the minimum limits of the

Illinois Vehicle Code (Code) (625 ILCS 5/1--100 et seq. (West

1994)) is not "an INSURED" under a car dealer's garage policy) or

Madison Mutual Insurance Co. v. Universal Underwriters Group, 251

Ill. App. 3d 13 (5th Dist. 1993) (holding that a permissive user

with or without personal insurance coverage in compliance with the

minimum limits of the Code is "an INSURED" under a car dealer's

garage policy) is the better approach in dealing with the issue of

whether a test driver/permitted user is "an INSURED" under a car

dealer's garage policy. 

     Plaintiff's complaint alleges the following in a single count. 

On March 29, 1994, Rodney Luckhart was the test driver of a 1994

Jeep Cherokee owned by defendant, Joyce Pontiac GMC.  While

proceeding eastbound on 75th Street in Naperville, Luckhart rear

ended an automobile owned by Vivian Carter and operated by Raun

Calinee.  Both parties suffered injuries, and the automobile was

damaged.  At the time of the accident, Mr. Luckhart was insured by

State Farm under a personal auto policy.  Joyce Pontiac GMC was

insured by Universal.  Vivian Carter and Raun Calinee made demands

upon State Farm for their claims.  State Farm settled the Carter

and Calinee claims for $9,092.15.

     State Farm, as subrogee of Rodney Luckhart, then brought this

breach of contract action alleging Universal had failed and refused

to pay, according to its contracted-for policy obligations, the

claims arising out of the March 29, 1994, automobile accident. 

State Farm's complaint alleged Luckhart, its subrogee, was entitled

to coverage under the Universal policy.  As the operator of a

vehicle in Illinois with the permission of its owner, Luckhart was

a person "required by law to be an INSURED" while driving that

vehicle.  Therefore, Luckhart fit the definition of "an INSURED"

within the meaning of that insuring agreement.  Relying upon the

decision in Madison Mutual, the complaint further asserted that the

Universal policy afforded primary coverage for the accident.  

     Relying on Steinberg, Universal contended (1) that Rodney

Luckhart was not a person "required by law to be an INSURED" under

its policy; and (2) that, if Luckhart were "an INSURED,"

Universal's coverage would be only the amount necessary to provide

Luckhart with $20,000 per person/$40,000 per accident limits which

Luckhart already possessed from State Farm, and, therefore,

Universal owed no coverage to Luckhart.  

     The trial court granted plaintiff's motion for summary

judgment and denied Universal's motion for summary judgment,

finding Madison Mutual to be older and more persuasive than

Steinberg.  The trial court also determined that the Universal

policy is primary, whereas the State Farm policy is excess. 

Judgment was entered in plaintiff's favor in the amount of

$9,092.15.  Defendant's motion for reconsideration was denied. 

This timely appeal follows.  

     On appeal, defendant argues that the trial court erred in

finding for plaintiff and holding that Rodney Luckhart is "an

INSURED" under Universal's garage policy definition No. 3 of "WHO

IS AN INSURED" and pursuant to the relevant provisions of the Code. 

We disagree and we affirm.

     The relevant portion of Universal's garage policy states:

     "INSURING AGREEMENT - WE will pay all sums the INSURED legally

     must pay as damages (including punitive damages where

     insurable by law) because of INJURY to which this insurance

     applies caused by an OCCURRENCE arising out of GARAGE

     OPERATIONS or AUTO HAZARD.

                                   * * *

     'AUTO HAZARD' means the ownership, maintenance, or use of any

     AUTO YOU own or which is in YOUR care, custody or control and:

     (1) used for the purpose of GARAGE OPERATIONS or 

     (2) used principally in GARAGE OPERATIONS with occasional use 

     for other business or non-business purposes or

     (3) furnished for the use of any person or organization.  

                                   * * *

     WHO IS AN INSURED - ***

     With respect to the AUTO HAZARD:

     (1) YOU;

     (2) Any of YOUR partners, paid employees, directors,

     stockholders, executive officers, a member of their household

     or a member of YOUR household, while using an AUTO covered by

     this Coverage Part, or when legally responsible for its use. 

     The actual use of the AUTO must be by YOU or within the scope

     of YOUR permission;

     (3) Any other person or organization required by law to be an

     INSURED while using an AUTO covered by this Coverage Part

     within the scope of YOUR permission." 

     We will begin with a discussion of the relevant statutes and

statutory construction.  

     The mandatory insurance provision of the Code states:

          "Required liability insurance policy.  (a) No person

     shall operate, register or maintain registration of, and no

     owner shall permit another person to operate, register or

     maintain registration of, a motor vehicle designed to be used

     on a public highway unless the motor vehicle is covered by a

     liability insurance policy."  625 ILCS 5/7--601(a) (West

     1994).

     The vehicle dealers provision of the Code states:

     "A Certificate of Insurance in a solvent company *** shall be

     included ***.  The policy must provide liability coverage in

     the minimum amounts of $100,000 for bodily injury to, or death

     of, any person, $300,000 for bodily injury to, or death of,

     two or more persons in any one accident, and $50,000 for

     damage to property."  625 ILCS 5/5--101(b)(6)(West 1994).

     Section 7--317 of the Code declares a vehicle owner's policy

of liability insurance:

          "1. Shall designate by explicit description or by

     appropriate reference, all motor vehicles with respect to

     which coverage is thereby intended to be granted;

          2. Shall insure the person named therein and any other

     person using or responsible for the use of such motor vehicle

     or vehicles with the express or implied permission of the

     insured[.]"  625 ILCS 5/7--317(b)(1), (b)(2) (West 1994).  

     With regard to statutory construction, 

     "the cardinal rule *** is to ascertain and give effect to the

     true intent and meaning of the legislature.  [Citation.]  In

     this endeavor, the courts should look first to the statutory

     language [citation], for the language of the statute is the

     best indication of the legislature's intent [citation].  Where

     the meaning of an enactment is unclear from the statutory

     language itself, the court may look beyond the language

     employed and consider the purpose behind the law and the evils

     the law was designed to remedy.  [Citation.]  Where, however,

     the language of a statutory provision is clear, the court must

     give it effect [citation] without resorting to other aids for

     construction [citation]."  Solich v. George & Anna Portes

     Cancer Prevention Center of Chicago, Inc., 158 Ill. 2d 76, 81

     (1994).  

     After a careful review of the relevant statutes, we determine

that they are silent with regard to the issue in the present case. 

We agree with the Madison court that it is not clear from the plain

language of the mandatory insurance provision whether the operator

or the owner of the vehicle must provide the mandatory insurance. 

Nevertheless, it is certain that when Mr. Luckhart was operating

the vehicle he was required to be covered by a liability insurance

policy.  As a result, the issue in terms of our review is limited

to the question of whether Mr. Luckhart was an insured under

Universal's garage policy at the time of the accident.  In other

words, we must determine whether Mr. Luckhart was "required by law

to be an INSURED" under Universal's garage policy.  

     With respect to insurance policies,

          "[t]he construction of an insurance policy's provisions

     is a question of law.  [Citations.]  In construing an

     insurance policy, the court must ascertain the intent of the

     parties to the contract.  [Citations.]  To ascertain the

     meaning of the policy's words and the intent of the parties,

     the court must construe the policy as a whole [citations],

     with due regard to the risk undertaken, the subject matter

     that is insured and the purposes of the entire contract

     [citation].  If the words in the policy are unambiguous, a

     court must afford them their plain, ordinary, and popular

     meaning.  [Citations.]  However, if the words in the policy

     are susceptible to more than one reasonable interpretation,

     they are ambiguous [citation] and will be construed in favor

     of the insured and against the insurer who drafted the policy

     [citations]."  (Emphasis in original.)  Outboard Marine Corp.

     v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 108-09

     (1992).  

     Before beginning our analysis, it is important to understand

(1) the applicable standard of review and (2) the public policy

considerations relating to auto insurance and insurance generally. 

With regard to the applicable standard of review, appellate review

of a summary judgment ruling is de novo.  Outboard Marine Corp.,

154 Ill. 2d at 102.  "Summary judgment is appropriate when there

are no genuine issues of material fact and the moving party is

entitled to judgment as a matter of law."  Outboard Marine Corp.,

154 Ill. 2d at 102.  An appellate court may affirm a summary

judgment on any basis found in the record.  Monticello Insurance

Co. v. Wil-Freds Construction, Inc., 277 Ill. App. 3d 697, 701

(1996).   

     With regard to the public policy considerations, the most

important concept to remember is that " 'the purpose of the

insurance requirement under the Illinois Motor Vehicle Act is the

protection of the public and not some other insurance company.' " 

Insurance Car Rentals, Inc. v. State Farm Mutual Automobile

Insurance Co., 152 Ill. App. 3d 225, 232 (1987), quoting

Continental Casualty Co. v. Travelers Insurance Co., 84 Ill. App.

2d 200, 206 (1967).  In addition, "[w]here provisions of an

insurance contract are clear and unambiguous and neither illegal

nor against public policy, they are to be enforced by the courts." 

Equity General Insurance Co. v. Patis, 119 Ill. App. 3d 232, 236

(1983). Finally, an insurance policy "should not be given a

strained, forced, unnatural, or unreasonable construction, or a

construction which would *** lead to an absurd conclusion."  45

C.J.S. Insurance §366, at 89 (1993).

     We agree with the court in Madison Mutual which stated that

"[t]he basic difficulty with Universal's interpretation of its

definition of insured is that it equates 'required by law' with

someone who is otherwise uninsured, thus requiring or needing

insurance."  (Emphasis in original.)  Madison Mutual, 251 Ill. App.

3d at 16.  However, the definition of insured under defendant's

policy makes no distinction between whether the person "required by

law" to be an insured has insurance coverage under a separate

policy.  "Whether or not a person is insured under a separate

policy when he or she borrows a car from [the car dealer] is of no

consequence in determining whether he or she is 'required by law'

to have insurance under Universal's definition of insured." 

Madison Mutual, 251 Ill. App. 3d at 16.  Had Universal wished to

make this distinction, it could have easily included or

specifically excluded covered parties.  However, Universal did not

choose to do this.     

     Defendant argues that the public policy of Illinois, as

expressed in the mandatory insurance provision, does not require

that car dealers furnish insurance coverage to customers using

their autos.  Nevertheless, defendant concedes that, if an

uninsured person were to test drive one of their vehicles, the

uninsured permitted user would be covered under defendant's garage

policy.  We see no reason to distinguish between this situation and

the present one in which a permitted user has a personal liability

auto insurance policy prior to test driving a vehicle.   To do so

could lead to unreasonable and possibly absurd results.

     We recognize defendant's argument that it is unfair to hold

Universal liable when State Farm receives premiums from the test

driver.  However, by permitting customers to test drive their

vehicles, the car dealer receives a vital benefit to the success of

his business; i.e., an exponential increase in the probability the

permitted user will actually purchase the test-driven vehicle. 

Considering the statutory authority and the public policy

considerations, it is not unreasonable or manifest error to hold

Universal primarily liable for insurance coverage during the time

a permitted user test drives a vehicle.  Therefore, we hold that a

permissive user with or without personal insurance coverage in

compliance with the Code is "an INSURED" under Universal's policy. 

     Based on the aforementioned analysis, we reject the reasoning

in Steinberg which holds that, in the absence of a statute

specifically stating that vehicle owners must provide insurance

coverage for permissive vehicle users (i.e., the car rental

provision of the  Code (625 ILCS 5/9--105 (West 1994)); taxicab

owners provisions of the Code (625 ILCS 5/8--108, 8--109 (West

1994))), there is no requirement car dealers provide insurance

coverage for customers or permitted users.  Steinberg, 272 Ill.

App. 3d at 82.  In other words, the Steinberg majority held that a

permissive user with personal insurance coverage in compliance with

the Code is not "required by law to be an INSURED" under

Universal's policy and, therefore, is not "an INSURED" under

Universal's policy.  Once again, to draw such a fine, artificial

line could lead to unreasonable and possibly absurd results that

would  weaken  the purpose of the insurance requirement under the

Code.  Furthermore, in light of the public policy considerations

identified, we do not find defendant's references to the Kentucky,

Missouri, and Montana statutes and case law  applicable or relevant

to the present case.         

      Each party has also argued that the language of its  policy

concerning the amount to be paid defines its obligation as excess

coverage.  Defendant presents this argument as an alternative to

its statutory construction and policy intention arguments.   In

other words, if this court determines that Luckhart is "an

INSURED," defendant argues that he still would not be entitled to

coverage from Universal because Universal is only required to

provide excess coverage.  Plaintiff responds that its policy also

only requires excess coverage, and, because the language of

Universal's policy is illusory and without meaning, this court

should disregard defendant's claim.

     We acknowledge that when interpreting an insurance policy our

responsibility is to "ascertain and enforce the intention of the

parties as expressed in the agreement."  Springfield Fire &

Casualty Co. v. Garner, 255 Ill. App. 3d 685, 695 (1993). 

Furthermore, we are not to be guided by the private or self-serving

intent of the parties; instead we must look to the intent of the

parties as expressed in the agreement.  Guaranty National Insurance

Co. v. Koch, 242 Ill. App. 3d 692, 696-97 (1993).   However, when

that express intention is inconsistent with or in violation  of

public policy considerations, a court may not be able to enforce

strictly the expressed intention of the parties.  Guaranty National

Insurance Co., 242 Ill. App. 3d at 695.

     Here, we have already resolved the statutory construction

argument against defendant, and that portion of this order is

dispositive of this issue.  In coming to the conclusion that

defendant's policy shall be used to reimburse plaintiff, we have

also applied public policy considerations and determined that to

accept defendant's statutory construction argument would be to

weaken the purpose of the mandatory insurance requirements.  While

we do not necessarily agree with plaintiff that defendant's policy

coverage language is illusory and without meaning, we do determine

that to accept the expressed intention of the parties to this

insurance agreement would be inconsistent with the public policy of

the state of Illinois and could ultimately lead to an unreasonable

and absurd result.

     The facts of this case do not mandate that we address the

ultimate excess coverage issue.  Here, the amount sought is

$9,092.15.  This amount is considerably below the $20,000/$40,000

coverage requirement of the mandatory insurance provision (625 ILCS

5/7--601(a)(West 1994)) and significantly below the

$100,000/$300,000 coverage requirement of the vehicle dealers

provision  (625 ILCS 5/5--101(b)(6)(West 1994)).  Furthermore, to

address this issue here, without allowing an adequate opportunity

for briefing and argument, would be unfair.  

     For the foregoing reasons the judgment of the circuit court of

Du Page County is affirmed.

     Affirmed.

     GEIGER and RATHJE, JJ., concur.