2023 IL App (1st) 221057

FIRST DISTRICT,
FIRST DIVISION
December 11, 2023

No. 1-22-1057

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 21 CH 01571 |
| | ) | |
| RICHARD ARROYO, | ) | Honorable |
| | ) | Caroline Kate Moreland, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Justice Lavin concurred in the judgment and opinion.
Justice Pucinski dissented, with opinion.

**OPINION**

¶ 1        On February 20, 2020, Chicago police officer Richard Arroyo was injured in an on-duty

motor vehicle accident caused by an uninsured motorist. His personal automobile insurer, State

Farm Mutual Automobile Insurance Company (State Farm), filed a declaratory judgment action,

seeking to reduce the policy's uninsured motorist bodily injury coverage limit by the amount the

City of Chicago (City) paid to Arroyo's medical providers. The circuit court granted summary

judgment to State Farm. For the reasons that follow, we affirm.

¶ 2                                BACKGROUND

¶ 3        State Farm issued an automobile insurance policy to Arroyo which included uninsured

motor vehicle coverage in the amount of $100,000 per person and $300,000 per accident. The

policy contained a setoff provision stating:

"2. Any amount paid or payable to or for the *insured* under any workers' compensation law, pension code, municipal ordinance, labor union fund, disability benefits law, or similar law shall reduce the amount payable under the coverage." (Emphasis in original.)

¶ 4        On February 20, 2020, Arroyo was injured in the performance of his police duties when an uninsured motorist, Donald James Johnson, collided with his vehicle. The City paid $68,594.70 to Arroyo's medical providers pursuant to the collective bargaining agreement (CBA) between the Chicago Police Department and the Fraternal Order of Police Chicago Lodge No. 7, which provides: "The Employer agrees to pay all hospital, medical and prescription costs of an Officer who is on a leave of absence for duty or occupational disability purposes, all at no cost to the employee."

¶ 5        Arroyo made a claim with State Farm for uninsured motorist coverage under his policy. On April 1, 2021, State Farm filed a declaratory judgment action seeking to enforce the setoff provision against the uninsured policy limit in the amount of $68,594.70.

¶ 6        On June 15, 2021, Arroyo filed an answer, affirmative defenses, and counterclaim. Count I of his counterclaim was for a declaratory judgment that State Farm was not entitled to a setoff for the City's payments to Arroyo's medical providers. Count II was a claim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)) for bad faith claims practices.

¶ 7        State Farm moved for summary judgment, arguing that the City's payments fell under the setoff provision because the City entered into the CBA pursuant to section 2-32-1500 of the Chicago Municipal Code (Municipal Code) (Chicago Municipal Code § 2-32-1500 (amended Nov. 26, 2019)) and section 22-306 of the Illinois Pension Code (40 ILCS 5/22-306 (West 2020)).

¶ 8        Section 2-32-1500 of the Municipal Code, titled "Program administration," provides:

"(a) The Comptroller is authorized to administer a program to provide for payment of reasonable and necessary expenses for medical care, hospital treatment and vocational retraining, if appropriate, for Police or Fire Department personnel who sustain non-fatal injuries while in the performance of duty, in accordance with Article 22, Division 3 of the Illinois Pension Code, codified at 40 ILCS 5/22-301, et seq., and to that end may authorize payment of such expenses.

(b) The Comptroller may carry out the duties set forth in subsection (a) of this section either directly, or through a designee, agent or contractor, and is authorized to enter into one or more agreements to secure the services of such designee, agent or contractor." Chicago Municipal Code § 2-32-1500 (amended Nov. 26, 2019).

¶ 9        The foregoing ordinance is "in accordance with Article 22, Division 3 of the Illinois Pension Code" (*id.* § 2-32-1500(a)), which provides, in relevant part:

"The corporate authorities of any city or the village may provide by ordinance that in case of an accident resulting in an injury to or death of a policeman or fireman in the employ of such city or village while in the performance of his duties, the officer at the head of the department or such other officer as may be designated may secure and provide proper medical care and hospital treatment for any such policeman or fireman. The city or village may incur the expense aforesaid and appropriate and pay for the same." 40 ILCS 5/22-306 (West 2020).

¶ 10       Arroyo filed a response in which he argued that his "medical benefits were paid pursuant to the City's contractual undertakings in the CBA, which are beyond the reach of the setoff provision." According to Arroyo, the provisions of the Municipal Code and Pension Code cited

by State Farm "did not compel or require the City to pay [his] medical benefits"; he argued that the City's obligation to pay arose solely from the CBA, which is outside the ambit of the setoff provision.

¶ 11    On July 15, 2022, the trial court granted State Farm's motion for summary judgment on its declaratory judgment claim as well as Arroyo's counterclaim, stating: "It is clear that State Farm is entitled to a set off for the fees paid by the City of Chicago under the Collective Bargaining Agreement, as authorized by statute and municipal ordinance."[1]

¶ 12                                    ANALYSIS

¶ 13    We review the trial court's grant of summary judgment *de novo* (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)), keeping in mind that summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020).

¶ 14    Interpretation of an insurance policy is an issue of law appropriate for resolution at the summary judgment stage. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). The court's primary objective is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). If the language is plain and unambiguous, we apply it as written. *Crum*, 156 Ill. 2d at 391. However, if the language is susceptible to more than one reasonable meaning, "it is considered ambiguous and will be construed against the insurer." *Gillen*, 215 Ill. 2d at 393; see *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 141 (1999) ("Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow" but must adopt the interpretation that

---

[1]Arroyo does not appeal the disposition of his section 155 counterclaim.

favors the insured.). Moreover, "a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen*, 215 Ill. 2d at 393. Terms that are not defined in the policy will be given their "plain, ordinary and popular meaning" and "will be construed with reference to the average, ordinary, normal, reasonable person." *Id.* (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 115 (1992)).

¶ 15        As relevant here, the setoff provision in Arroyo's policy applies to "[a]ny amount paid or payable to or for the insured *under* any *** pension code [or] municipal ordinance." (Emphasis added and omitted.) Arroyo argues that payments are only made "under" a law if they are "legally mandated by" that law. Here, the Municipal Code "authorize[s]" the comptroller to administer a program to pay medical expenses for police officers who are injured in the line of duty, but it does not require implementation of such a program. Chicago Municipal Code § 2-32-1500 (amended Nov. 26, 2019). Similarly, while section 22-306 of the Pension Code provides that a city "may" pay the costs of medical care for a police officer injured in the line of duty, it does not mandate that such payments be made. 40 ILCS 5/22-306 (West 2020). The City's obligation to pay Arroyo's medical expenses arose solely from the CBA, a contractual undertaking between the City and the police union. Thus, Arroyo claims that the City's payments were not made "under" any pension code or municipal ordinance.

¶ 16        "Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010). The Merriam-Webster dictionary defines "under" as "subject to the authority, control, guidance, or instruction of." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/under (last visited Nov. 28, 2023)

[https://perma.cc/WP7J-JH6Z]. Here, although the City's obligation to pay Arroyo's medical expenses arose from the CBA, the City entered into that contract "subject to the authority *** of" section 2-32-1500 of the Municipal Code, which authorizes payment of medical expenses for officers injured in the line of duty. Moreover, that section is explicitly promulgated "in accordance with" section 22-306 of the Pension Code. See Chicago Municipal Code § 2-32-1500(a) (amended Nov. 26, 2019). Thus, using the dictionary definition of the word "under," the City's payments to Arroyo were made "under" the Municipal Code and Pension Code. Contrary to Arroyo's argument, the setoff provision contains no language requiring that payments be "legally mandated by" a municipal code, pension code, or similar law. In interpreting an insurance policy, "the court may not rewrite the contract of the parties by altering the language used by the parties." *Bailey v. State Farm Fire & Casualty Co.*, 267 Ill. App. 3d 653, 661 (1994).

¶ 17       Our supreme court's decision in *Gillen*, 215 Ill. 2d 381, is instructive. There, our supreme court examined a setoff provision for payments made " 'under any worker's compensation, disability benefits, or similar law.' " *Id.* at 384. The court held that the setoff did not apply to medical expenses paid by the City to a firefighter because the language "would not convey to the average, ordinary, normal, reasonable person an intention to include our pension statute within the setoff clause of the policy." *Id.* at 395. The court noted that "the insurer has the capacity to draft intelligible contracts" and that "[h]ad State Farm intended to include a setoff for payments made in accordance with the Pension Code, it easily could have modified the policy language to so provide." (Internal quotation marks omitted.) *Id.* at 396. Thus, the court clearly contemplated that the payments at issue were "made in accordance with the Pension Code." After *Gillen* was decided, State Farm modified its setoff provision to explicitly include "any *** pension code [or]

municipal ordinance," thus conveying to the average policyholder that such payments were, in fact, subject to a setoff.

¶ 18     Arroyo argues that *Gillen* is inapposite because the version of the Chicago Municipal Code then in effect contained mandatory rather than permissive language. Compare *Gillen*, 215 Ill. 2d at 387 (" '[T]he same *shall* be paid, disbursed and recouped in accordance with the following provisions.' " (Emphasis added.) (quoting Chicago Municipal Code § 3-8-190 (1990))), with Chicago Municipal Code § 2-32-1500 (amended Nov. 26, 2019) ("[the Comptroller] *may* authorize payment of such expenses" (emphasis added)). However, section 22-306 of the Pension Code, upon which the *Gillen* court primarily relies, is permissive. See 40 ILCS 5/22-306 (West 2020) ("The corporate authorities of any city or the village *may* provide by ordinance ***." (Emphasis added.)); *cf. Mitsuuchi v. City of Chicago*, 125 Ill. 2d 489, 493 (1988) (payment made to officer injured in the line of duty was "pursuant to" section 22-306 of the Pension Code notwithstanding that section's permissive language). More importantly, neither the *Gillen* court nor the plain language of the setoff provision requires that payments be legally mandated by a pension code or municipal ordinance to come within the ambit of that provision. Accordingly, the trial court did not err in entering summary judgment for State Farm as a matter of law.

¶ 19                                     CONCLUSION

¶ 20     For the foregoing reasons, we affirm the trial court's grant of summary judgment for State Farm.

¶ 21     Affirmed.

¶ 22     JUSTICE PUCINSKI, dissenting:

¶ 23     I agree with defendant-appellant Arroyo that the language of the setoff in the State Farm Policy is not sufficiently clear and precise to alert the average reader that a payment of medical bills pursuant to a contract, in this case, a collective bargaining agreement (CBA), could trigger the setoff.

¶ 24     The City of Chicago (City) has a CBA with the union representing City police officers, the Fraternal Order of Police (FOP), under which it has committed itself to pay the medical expenses of any officer injured while on duty.

¶ 25     There is no dispute that Arroyo was a City police officer, was on duty, and was injured.

¶ 26     Implementing its commitment under the CBA, the City paid those expenses. It did not pay those expenses pursuant to the Municipal Code's section authorizing the City comptroller to pay nor pursuant to the Pension Code. No one has argued that the funds to pay for Officer Arroyo's medical expenses came from the City's pension fund, so I will take that out of the equation.

¶ 27     It has been argued that section 2-32-1500 of the City's Municipal Code, by authorizing the Comptroller the ability to establish ("may establish") a program to pay these expenses ("may authorize these payments"), is enough to say that the money came from the City under its own code. See Chicago Municipal Code § 2-32-1500 (amended Nov. 26, 2019).

¶ 28     I do not agree. State Farm does not argue that the funds to pay for these medical expenses were from any such program actually established by the City's comptroller, and there is nothing in the record to show that the City's comptroller actually did establish such a program.

¶ 29     All that was acted upon was the CBA. State Farm's setoff provision sets off monies paid pursuant to laws. A CBA is not a law, it is a contract. State Farm could have written CBAs,

contracts, or any other written agreement into its setoff provision. It did not. I would reverse the trial court and find for Mr. Arroyo.

***State Farm Mutual Automobile Insurance Co. v. Arroyo*, 2023 IL App (1st) 221057**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CH-01571; the Hon. Caroline Kate Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | John K. Kennedy and Daniel Watkins II, of Kennedy Watkins LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Brent D. Tinkham, of Taylor Miller LLC, of Chicago, for appellee. |