(No. 71323.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIAM VILLARREAL *et al.*, Appellees.

*Opinion filed October 15, 1992.—Rehearing denied November 30, 1992.*

HEIPLE, J., took no part.

Neil F. Hartigan and Roland Burris, Attorneys General, of Springfield, and Raymond Kimbell III, State's Attorney, of Galesburg (Kenneth R. Boyle, John X. Breslin and Gary F. Gnidovec, of the Office of the

State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Kenneth D. Brown, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellees.

JUSTICE MORAN delivered the opinion of the court:

This consolidated appeal originated in Knox County, with defendants, William and Brett Villarreal, being charged with various counts of resisting and obstructing peace officers, and multiple counts of aggravated battery, arising out of several police officers' attempt to make an arrest of a third person. Defendants filed consolidated motions to quash their arrests and dismiss all charges against them. The trial court determined that defendants' fourth amendment rights had been violated; therefore, it granted their motions, dismissed all charges, and denied the State's motion to reconsider. The appellate court, with one justice dissenting, and another concurring in part and dissenting in part, affirmed the trial court's order. (205 Ill. App. 3d 629.) Thereafter, this court granted the State's petition for leave to appeal (134 Ill. 2d R. 315).

The State presents two issues for review: first, whether the officers' warrantless and nonconsensual entry into defendants' residence to arrest a third person violated the defendants' fourth amendment rights; and second, whether the aggravated battery charges against Brett Villarreal were actually dismissed, since two of the three justices on the appellate court voted to reverse the trial court's judgment on this point, even though the lead opinion purported to affirm the trial court's entire decision. However, for reasons explained later in this opinion, we find the deciding issue to be whether evidence of defendants' actions directed towards the offi-

cers while they were undertaking an arrest of a third party should be suppressed under the exclusionary rule, since, defendants' argue, the officers entry into the house was unlawful, or to use a phrase coined by Justice Frankfurter in *Nardone v. United States* (1939), 308 U.S. 338, 84 L. Ed. 307, 60 S. Ct. 266, the evidence of the defendants' actions was "fruit of the poisonous tree."

On July 15, 1988, defendants, along with James Upson and Jeff Curtis, were involved in a fight with two other individuals at a Days Inn motel. As a result, Upson and Curtis were arrested and taken into custody by Officer Thomas Camper. William Villarreal, and possibly Brett Villarreal (the record as to his presence is inconclusive), accompanied Upson and Curtis to the police station, whereupon Upson and Curtis received notices to appear at a later date and were released. Shortly thereafter, Camper received a complaint from the Days Inn desk clerk that Upson had "knocked over" a motorcycle in the parking lot. Camper immediately responded and observed an off-white vehicle in the vicinity of the motel, being driven by William Villarreal. Believing that Upson was also in that vehicle, he followed it. About one-half block from the defendants' residence, Camper activated his overhead lights. The vehicle then turned into defendants' driveway, four occupants exited the car and, shortly thereafter, Camper and Officer Chris Howard pulled into the driveway behind them.

The four occupants of the car were identified as William and Brett Villarreal (defendants), who resided at the residence, Upson, and Curtis. By the time the officers pulled into the driveway, the four had already exited the vehicle and were walking towards the front porch of the defendants' residence. Camper got out of the patrol car and indicated that he wanted to speak with Upson; however, the four kept walking towards the front porch.

Sometime when Upson had either entered the enclosed front porch or while he was still outside, Camper yelled that he was under arrest, but Upson continued into the house. At this point, Camper attempted to enter the residence, but defendants resisted, telling Camper that he needed a warrant. Lacking a warrant, Camper indicated that he was in "fresh pursuit" of Upson and was going to enter the residence to effectuate the arrest. A physical confrontation between the defendants and the officers ensued at the front door, resulting in Camper's pushing his way in. The scuffle eventually moved to the kitchen, where two other officers, who had subsequently arrived, arrested Upson. While the officers were removing Upson, a second altercation occurred, resulting in the aggravated battery charges against Brett Villarreal.

William Villarreal was charged with the offenses of resisting and obstructing a peace officer. Brett Villarreal was charged with three counts of aggravated battery, resisting a peace officer, and two counts of obstructing a peace officer. Defendants' motions to quash the arrests and dismiss all charges were granted by the trial court, after it determined that the officers' entry into defendants' house violated their rights.

Before proceeding to the substantive issues of this appeal, it is necessary for this court to address the judgment entered by the appellate court. As earlier noted, the appellate court entered a judgment which purported to affirm, *in toto*, the judgment of the trial court. However, examination of the separate opinions entered by the three justices on that appellate court panel reveals that two of the justices would have reversed the trial court's dismissal of the aggravated battery counts against Brett Villarreal. The concurrence of two justices is necessary for the appellate court to reach a valid judgment. (Ill. Const. 1970, art. VI, §5; 134 Ill. 2d R. 22(c); *People ex rel. Byrnes v. Standard* (1956), 9 Ill. 2d 372.)

Here, it appears that the "majority" opinion does not reflect the concurrence of two justices that was required to affirm the trial court's dismissal of those charges. The State, in its petition for leave to appeal and in its main brief, has requested that this court exercise its supervisory authority to correct the judgment of the appellate court. However, to remedy the appellate court's error, we will simply vacate that court's judgment and act directly upon the judgments entered by the trial court.

Regarding the merits of the judgments entered by the trial court, the State argues that the court erred in granting the defendants' motions. A trial court's finding with regard to a motion to quash an arrest will not be disturbed on appeal unless it is manifestly erroneous. (*People v. Redd* (1990), 135 Ill. 2d 252, 268.) In maintaining that the court erred in concluding that the police officers improperly entered defendants' residence in violation of the fourth amendment, the State's major premise centers on the basic principle that a suspect may not defeat an arrest which has been set in motion in a public place by escaping to a private place. (*United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406.) In responding to the State's contention, defendants present an extended analysis predicated upon the general proposition that warrantless, nonconsensual entries into a residence violate the fourth amendment. Specifically, their analysis focuses upon determining the existence or nonexistence of exigent circumstances to justify the warrantless entry into the residence by the police.

Although both parties' arguments go into great detail and analysis as to an individual's fourth amendment rights, the real issue here is whether evidence of defendants' actions directed towards the officers while they were undertaking an arrest of a third party should be

suppressed under the exclusionary rule as "fruit of the poisonous tree."

In determining the extent that an individual can use force against a police officer, we first need to look at two provisions of the Criminal Code of 1961, sections 31—1 and 7—7, which respectively provide:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." Ill. Rev. Stat. 1987, ch. 38, par. 31—1.

> "A person is not authorized to use force to resist an arrest which he knows is being made *** by a peace officer ***, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." (Ill. Rev. Stat. 1987, ch. 38, par. 7—7.)

A reading of these provisions indicates that the legislature intended to prevent individuals from using force in obstructing police officers in their performance of authorized acts. Moreover, section 7—7 reveals that the prohibition against using force is not limited to situations where the person is resisting his own arrest, but is also applicable to situations in which he is interfering with the arrest of another. *People v. Shinn* (1972), 5 Ill. App. 3d 468, 472.

In *People v. Locken* (1974), 59 Ill. 2d 459 (defendant resisted after being told that he was under arrest for not allowing the police officers' warrantless entry into his mother's house to investigate an alleged underage drinking party, where there were no exigent circumstances present), this court held that section 31—1 is to be read in conjunction with section 7—7 and that, by enacting section 7—7, the legislature intended that the making of an unlawful arrest is to be considered an authorized act for purposes of section 31—1. (*Locken*, 59 Ill. 2d at 464-65.) Consequently, under *Locken*, resistance of even an

unlawful arrest by a known officer would be a violation of section 31—1.

Defendants claim that *Locken* is not controlling because that case involved the undertaking of an unlawful *arrest* by a police officer, whereas here, defendants claim, the police activity involved an unlawful *entry* into defendants' home. The defendants rely on *People v. Swiercz* (1982), 104 Ill. App. 3d 733 (defendant's conviction for obstructing a police officer was reversed where the officer's warrantless, nonconsensual, and forcible entry into defendant's apartment was not an authorized act within the meaning of section 31—1), and *People v. Young* (1968), 100 Ill. App. 2d 20 (court held that defendant was not guilty of resisting a police officer under section 31—1 where the officer was engaged in making an unlawful search of defendant's home). In reliance thereon, the defendants submit that neither *Locken* nor section 7—7 makes it unlawful to resist an illegal entry or search of a private home; therefore, defendants argue, their resistance to the officers was not a violation of section 31—1.

Defendants are correct in claiming that the crucial fact in *Locken* was the undertaking of an unlawful *arrest* by a police officer, and that *Locken* is not relevant to obstruction of an unlawful *entry* into a person's home by a known officer. As the court in *Swiercz* did not regard the officer's actions to have included the undertaking of an arrest, it did not apply *Locken*. In *Swiercz*, there was no evidence indicating that an arrest was attempted or even contemplated by the officer at the time defendant denied him entry into the apartment. Accordingly, the court did not consider the officer's entry to be an "authorized act" for purposes of section 31—1. Similarly, in *Young*, the controversy focused on the officer's attempt to execute a *search* warrant. Clearly, the case at hand is distinguishable from both *Swiercz* and *Young*, as

the focus of the officers in this case was to arrest Upson, and not to search defendants' home.

Based upon the testimony presented during the pretrial hearing on the defendant's motion to dismiss, it appears that the officers confronted Upson with allegations of the alleged wrongdoing. When he failed to stop and discuss this matter with the police, they told him that he was under arrest. However, it is unclear whether Upson was in the house at the time the officer announced his arrest, or whether he even heard this statement. Nevertheless, based on the testimony, it is obvious that when the officers entered defendants' house they were in the process of making an arrest and there is no evidence that they entered the residence for any purpose other than simply to complete the arrest of Upson. During the pretrial hearing, Brett Villarreal's testimony was as follows:

> "Tom Camper said they wanted to talk to us, he wanted to take us downtown and question us about the incident that happened at the Days Inn. Jim Upson entered the house. Jeff Curtis was behind him, and I went in, and Bill was out front still talking to Tom Camper, and at that point he says, 'James is under arrest.' "

On the cross-examination of Brett Villarreal, the following testimony took place:

> "Q. You're on the steps, you hear Officer Camper say that he wanted to talk to you guys, wanted to discuss the case, but both of you proceeded into the house?
>
> A. Yeah. James Upson told him, 'I don't have anything to talk to you about,' walked in the house and shut the door behind him."

Here, the defendants knew that the officers' sole purpose for entering the house was to complete the arrest of Upson. Therefore, defendants were precluded from resisting the officers' attempt to enter the residence pur-

suant to *Locken,* regardless of whether the arrest of Upson would have been legal.

Notwithstanding *Locken,* defendants rely on the exclusionary rule for the proposition that since the entry of the officers into the home, and the subsequent arrests, were illegal, evidence of the defendants' alleged conduct should be suppressed. Consistent with the reasoning which supports the right under the fourth amendment to suppress physical evidence found during an illegal search, defendants attempt to persuade this court to extend the application of the exclusionary rule to the very criminal conduct which caused the filing of criminal charges against them. Based on *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, defendants maintain that evidence of their criminal conduct which transpired after the purported illegal entry into the defendant's residence should be suppressed as a "fruit" of the purported illegal entry.

However, this contention can be disposed of by *People v. Abrams* (1971), 48 Ill. 2d 446. In *Abrams,* the police were attempting to enter a residence in which an antiwar party was taking place. The officers were asked if they had a warrant, and were told that they could not enter without one. Subsequently, a minor scuffle developed. Throughout this incident, the defendant and others stood near the door blocking the passage of the officers, insisting that they leave the house until they had obtained a search warrant. As a result, the defendant and others were arrested and charged with various offenses, including disorderly conduct, battery, aggravated assault, and interfering with a police officer. In *Abrams,* this court held:

> "The consequence of an illegal search, under the exclusionary rule, is that the evidence obtained of past or existing criminal activity, though it may be competent otherwise, is subject to suppression in the criminal pro-

ceeding. In addition, the offending officers may be subjected to civil and criminal liability. This exclusion of evidence extends to indirect as well as direct products of officers' unlawful action so that 'fruits' of that action may be suppressed. Thus, testimony as to matters observed during an unlawful search which relate to past or existing criminal activity may be excluded as evidence. (*Cf. Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) But there is no authority to extend the rule to allow suppression of evidence of crimes which arise from and are in reaction to an illegal search. (*Cf. Vinyard v. United States* (8th cir., 1964), 335 F.2d 176; *United States v. Perdiz* (S.D.N.Y., 1966), 256 F. Sup. 805; see also, *Troop v. United States* (7th cir., 1956), 235 F.2d 123; *People v. Guillory* (1960), 178 Cal. App. 2d 854, 3 Cal. Rptr. 415.) In our judgment it would be beyond the intendment of the rule to extend it. We consider that the prohibiting of the use of evidence obtained of past or existing criminal activity, as well as the exposing of the offending officers to criminal and civil liability, were the only sanctions which have been intended under the exclusionary rule to redress, in a sense, the constitutional violation and to fulfill the policies underlying the rule, which are referred to in *Wong Sun v. United States*, 371 U.S. at 486, 9 L. Ed. 2d at 454. We judge that the sanctions now available provide adequate remedy against wrongful police intrusions. This is especially true where the conduct of the officers has not been intentionally unlawful. We and other courts, through whose decisions the rule of exclusion has evolved, have not contemplated that one who commits an unlawful homicide, assault, or other offense in reaction to an illegal search would be entitled to suppress the evidence of his deed. To countenance, through the use of the exclusionary rule, what can be regarded as an unlawful species of self-help would be to encourage unlawful and retaliatory conduct. It would set a policy fundamentally in opposition to a civilized rule of law." (*Abrams*, 48 Ill. 2d at 455-56.)

Consequently, the exclusionary rule cannot be used here to exclude the evidence of defendants' actions directed

against the officers, regardless of the illegality of their entering the defendants' home to arrest Upson.

Finally, defendants argue that their use of force was permitted under section 7—2 of the Criminal Code of 1961 as a defense of their dwelling. This section provides, in pertinent part, as follows:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling. (Ill. Rev. Stat. 1987, ch. 38, par. 7—2.)

Clearly, there appears to be a conflict present between this provision and sections 7—7 and 31—1. On the one hand, while section 7—2 allows a person to use force against another to prevent such other's unlawful entry into his residence, sections 31—1 and 7—7 both prohibit the use of force against peace officers in the performance of their duties.

It is a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied. (*In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 1063; *United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 43; *Cook County Police & Corrections Merit Board v. Illinois Fair Employment Practices Comm'n* (1978), 59 Ill. App. 3d 305, 308; *Winston v. Mitchell* (1977), 53 Ill. App. 3d 206, 212.) Since both sections 7—7 and 31—1 are very specific, as they relate solely to use of force against police officers, whereas section 7—2 relates to use of force against anyone, we conclude that where the provisions conflict, such as here, sections 31—1 and 7—7 prevail. Consequently, defendants could not use physical

force to prevent the police from entering their residence for the sole purpose of completing the arrest of Upson.

As a result of this opinion, we need not reach the issue of the legality of the officers' entry into defendants' home, an issue which was emphasized by the trial and appellate courts in rendering their decisions. Certainly, we need not conclude whether Upson's arrest was valid. However, it is important to stress that the conclusion of this court is based upon the very narrow circumstances before us, and that we do not intend to expand the police power to invade the sanctity of an individual's home. We certainly do not intend to diminish an individual's rights and protections offered him under the fourth amendment. The significance of these rights was well summarized in *United States v. United States District Court for the Eastern District of Michigan* (1972), 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 92 S. Ct. 2125, 2134, when the Court said: "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Nevertheless, this case illustrates the importance of allowing police the ability to effectively perform their duties, without interference from citizens resorting to self-help remedies. In our society, courts determine whether the police have exceeded their power, and if so, remedies are made available to those individuals harmed.

In summary, we conclude that an individual cannot resist or obstruct the arrest of himself or another, whether it is legal or illegal. To allow such self-help remedies would create havoc, and substantially hinder our police forces' ability to keep the peace. Further, defendants cannot rely on the exclusionary rule to suppress evidence of their physical actions directed against the officers on the basis of the officers' illegal entry into their home.

Consequently, we find that the trial court's decision below, allowing the defendants' motion to quash arrest and dismiss all charges, was manifestly erroneous. Accordingly, we vacate the judgment of the appellate court, reverse the judgment of the circuit court, and remand to the circuit court for further proceedings consistent with our opinion.

*Appellate court vacated;*
*circuit court reversed;*
*causes remanded.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.