UNIVERSAL UNDERWRITERS INSURANCE GROUP, Plaintiff-Appellant, v. IRENE GRIFFIN *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—96—1085

Opinion filed March 4, 1997.—Rehearing denied April 3, 1997.

Judge & James, Ltd., of Park Ridge (Jay S. Judge, Kristine A. Karlin, and Daniel M. Extrom, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Carol Proctor and Joshua G. Vincent, of counsel), for appellees.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
In July 1991, Howard Pontiac, Inc. (Howard), allowed its customer Irene Griffin to use a "loaner" car while it serviced her car. While she was driving the loaner, Griffin was involved in an accident. At

the time, plaintiff Universal Underwriters Insurance Group (Universal) insured Howard under a garage policy, and Allstate Insurance Company (Allstate) insured Griffin under a personal auto policy.

One of the other drivers involved in the accident, Dorothy Lubow, sued Griffin for negligence. Allstate initially defended Griffin in that suit but later tendered the defense to Universal, which then filed a complaint for declaratory judgment against defendants Allstate, Griffin, Lubow, and Howard. Allstate filed a counterclaim for declaratory judgment against Universal. Universal and Allstate filed cross-motions for summary judgment.

After a hearing, the circuit court held that Griffin was an insured under the Universal policy and that the limits of Universal's coverage for Griffin were $100,000 per person and $300,000 per accident, and it ordered Allstate and Universal to share liability on a *pro rata* basis. Universal appeals that decision.

To resolve the issues presented by this appeal, we must decide whether Griffin was an insured under Universal's policy. If we find that she was an insured, we must decide which insurer, Allstate or Universal, is responsible for coverage, and we must determine the amount of that coverage.

In its amended complaint for declaratory judgment, Universal asked for a declaration that it owed Griffin neither coverage nor a defense because (1) she was not an insured under its policy, (2) if she were an insured, Universal's coverage was excess over Allstate's, and (3) if there were coverage, the limits of that coverage were $20,000 per person and $40,000 per accident.

There is no amended counterclaim in the record, but Allstate's original counterclaim contained three counts. In count I, Allstate asserted that Griffin was an insured under the Universal policy and asked for a declaration that Universal reimburse Allstate for the fees and costs it incurred in defending her. In count II, Allstate asked the circuit court to declare that the limits of Universal's coverage with respect to Griffin were $100,000 per person and $300,000 per accident. In count III, Allstate asked for a declaration that its policy and Universal's policy were co-excess policies and, therefore, that Universal must pay Allstate its proportionate share of Griffin's defense.

Allstate filed a motion for summary judgment on its counterclaim and on Universal's complaint. It asked the circuit court to enter judgment that Griffin was an insured under Universal's policy, that the limits of Universal's coverage were $100,000/$300,000, and that Universal reimburse Allstate on a *pro rata* basis for its expenses in defending Griffin.

Universal responded with its own motion for summary judgment. It asked the circuit court to find that Griffin was not an insured under its policy and that it owed Griffin no coverage or defense. Alternatively, it asked the court to declare that its coverage was excess or that the limits of its coverage were $20,000/$40,000.

After a hearing, the circuit court entered a written order in which it essentially granted Allstate's motion and denied Universal's. It stated that both Universal and Allstate were excess insurers of Griffin. The "other insurance" clauses in the Universal and Allstate policies were incompatible, and, therefore, Universal and Allstate were to contribute to Griffin's defense on a *pro rata* basis. The court further found that Universal's liability was equal to its policy limit of $100,000/$300,000, and Allstate's liability was equivalent to its policy limits.

The court concluded:

"From a public policy standpoint, Allstate and Universal are responsible for coverage. Illinois automobile insurance law is mandated to protect the general public in instances where members of the general public may be injured in an automobile accident. The general public should be compensated for any injuries suffered. The insurance companies collect premiums from their customers and enjoy the monetary benefits of these premiums. The companies should adhere to their responsibility to protect the general public by living up to their full obligations under those policies."

On appeal, Universal first disputes the circuit court's conclusion that Griffin was an insured under its policy. The policy provided that Universal would pay "all sums the INSURED legally must pay as damages *** because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD." The policy defined "auto hazard" as "the ownership, maintenance, or use of any AUTO YOU own *** and: *** (3) furnished for the use of any person or organization."

The parties' dispute concerning Griffin's status as an insured focuses on the policy's definition of an insured:

"WHO IS AN INSURED—***

With respect to the AUTO HAZARD:

1. YOU;

2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission."

The parties agree that Griffin does not fall within the first two parts of this definition, and Universal does not dispute that she was acting within the scope of Howard's permission when she had the accident. Their disagreement centers on whether Griffin was "required by law to be an INSURED."

█ According to Universal, Griffin was not "required by law to be an INSURED" because Illinois law does not require auto owners to provide insurance coverage to permissive users of their cars. Universal acknowledges that the Illinois Vehicle Code contains the following mandatory insurance provision:

"Required liability insurance policy. (a) From January 1, 1990 through December 31, 1993,[1] no person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy.

The insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 7—203 of this Code ***." 625 ILCS 5/7—601(a) (West 1992).

Universal contends that, although this provision requires car owners and operators to maintain insurance coverage, it does not require owners to provide insurance coverage for operators of their cars.

█ Universal argues that Griffin also was not "required by law to be an INSURED" under section 5—101(b)(6) of the Vehicle Code (625 ILCS 5/5—101(b)(6) (West 1992)), which governs the type of insurance car dealers must maintain, because this section does not require new car dealers to provide coverage for permissive users. Section 5—101(b)(6) states:

"A Certificate of Insurance in a solvent company authorized to do business in the State of Illinois shall be included with each application covering each location at which he proposes to act as a new vehicle dealer. The policy must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property." 625 ILCS 5/5—101(b)(6) (West 1992).

According to Universal, if the legislature had intended to require

---

[1]The amended version of this statute, which became effective on January 1, 1994, contains no time limitation. 625 ILCS 5/7—601(a) (West 1994).

owners or car dealers to provide insurance for permissive users of their cars, it could have done so. In support of its argument, Universal notes that, in section 9—105 of the Vehicle Code, the legislature expressly requires owners of rented motor vehicles to provide insurance for the operator of a rented vehicle against liability. See 625 ILCS 5/9—105 (West 1992). Similarly, in section 8—108 of the Vehicle Code, the legislature expressly requires the owners of motor vehicles engaged in the transportation of passengers to provide insurance for operators of those vehicles against liability. See 625 ILCS 5/8—108 (West 1992). Universal contends that, by omitting similar express requirements from the mandatory insurance provisions contained in section 7—601 and section 5—101(b)(6) of the Vehicle Code, the legislature clearly did not intend to require owners or new car dealers to insure their permissive users.

Universal urges us to compare the Illinois insurance requirements to those in Kentucky, Missouri, and Montana. According to Universal, permissive users in those states are insureds under its garage policy because state statutes expressly require auto owners or car dealers to provide insurance coverage for permissive users. See *Universal Underwriters Insurance Co. v. Veljkovic*, 613 S.W.2d 426 (Ky. App. 1980); *George Walsh Chevrolet, Inc. v. Dieteres*, 864 S.W.2d 934 (Mo. App. 1993); *Bill Atkin Volkswagen, Inc. v. McClafferty*, 213 Mont. 99, 689 P.2d 1237 (1984). Universal argues that, because Illinois does not have a similar statute requiring that car owners or dealers provide insurance coverage for permissive users, permissive users in Illinois are not insureds under its policy.

Allstate responds that Griffin was "required by law to be an INSURED" because section 7—601 requires all vehicle operators to have insurance and prohibits all vehicle owners, such as Howard, from lending vehicles unless the operator has insurance. In the alternative, it argues that Universal's definition of an insured is ambiguous and must be construed against Universal, as the insurer.

At the heart of the parties' arguments is their discussion of two conflicting appellate court decisions involving the same Universal policy definition at issue in this case. Universal relies on *Steinberg v. Universal Underwriters Insurance Co.*, 272 Ill. App. 3d 79, 650 N.E.2d 14 (4th Dist. 1995), *appeal denied*, 163 Ill. 2d 589, 657 N.E.2d 639 (1995) (*Steinberg*), in which the court held that only underinsured or uninsured permissive users of a car owned by a car dealer are "required by law" to be insured and, therefore, only these users are insureds under Universal's garage policy. Allstate relies on *Madison Mutual Insurance Co. v. Universal Underwriters Group*, 251 Ill. App. 3d 13, 621 N.E.2d 270 (5th Dist. 1993), *appeal denied*, 154 Ill. 2d 561,

631 N.E.2d 710 (1994) (*Madison Mutual*), in which the court held that a permissive user of a car owned by a car dealer is "required by law to be an INSURED" because section 7—601 of the Vehicle Code (625 ILCS 5/7—601 (West 1992)) requires all vehicle operators to have liability insurance.

In November 1996, the second district issued an opinion in which it decided that a permissive user of a car dealer's car was an insured under a Universal garage policy that was like the one at issue in this case. See *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 285 Ill. App. 3d 115 (1996) (*State Farm*). In this decision, the second district followed the fifth district decision in *Madison Mutual*. The second and fifth districts agree that, under section 7—601 of the Vehicle Code, a permissive user of a car dealer's car is an insured under the Universal garage policy. As these two decisions present the majority and, in our view, the better-reasoned approach, we follow them rather than the conflicting decision in *Steinberg*.

In *Madison Mutual*, the court held that the driver of a loaner car was an insured under a garage policy Universal had issued the dealer. The driver, Jason Dorris, was involved in a car accident while driving the loaner car. There was no dispute that Dorris was insured under his father's policy with Madison Mutual Insurance Company. The critical issue was whether he was an insured under the Universal policy definition. See *Madison Mutual*, 251 Ill. App. 3d at 14-15.

The *Madison Mutual* court stated that it was not clear from section 7—601 of the Vehicle Code whether an owner or an operator is responsible for the mandatory insurance that provision requires. The court found it unnecessary to resolve this issue, however, because it decided that, in either case, section 7—601 required Dorris to be covered by liability insurance when he was operating the loaner car. Consequently, the court decided that he was "required by law to be an INSURED." *Madison Mutual*, 251 Ill. App. 3d at 15-16.

The court rejected Universal's argument that Dorris was not an insured under its policy because he had coverage through Madison Mutual Insurance Company. The court explained that Universal improperly equated the terms "required by law" with the words "*requiring* or *needing* insurance" (emphasis in original). *Madison Mutual*, 251 Ill. App. 3d at 16. The court stated that, under the Universal policy, the existence of coverage under a separate policy is of no consequence to the determination of whether that person is "required by law to be an INSURED." *Madison Mutual*, 251 Ill. App. 3d at 16.

In *Steinberg*, by contrast, the court held that Timothy Massey, an

individual who was involved in a car accident while test-driving a vehicle owned by a car dealer, was not an insured under the dealer's garage policy with Universal. *Steinberg*, 272 Ill. App. 3d at 80-81. At the time of the accident, Massey was covered by his mother's personal automobile policy with State Farm. As in this case, the question in *Steinberg* was whether Massey was an insured according to the Universal policy definition.

The *Steinberg* court found that Massey was not "required by law to be an INSURED" because Illinois has no statute that requires a car dealer to provide insurance coverage to customers or permissive users. The court noted that, in Illinois statutes that require insurance for rental car and taxicab owners, the legislature had expressly mandated that these owners provide insurance coverage for permissive users. *Steinberg*, 272 Ill. App. 3d at 82.

The *Steinberg* court disagreed with the *Madison Mutual* holding. It decided that the Universal policy was intended to cover only uninsured and underinsured customers because only these permissive users are "required by law to be" insureds. According to the court, because Massey had the statutorily required minimum insurance coverage with State Farm, he was not "required by law to be an INSURED" under the Universal policy. *Steinberg*, 272 Ill. App. 3d at 83.

Justice Cook dissented from the majority decision in *Steinberg*. He agreed instead with the *Madison Mutual* decision:

"Because [the dealer] was required to have insurance under the mandatory insurance law, and because [the dealer] was prohibited from permitting Massey to use its vehicle unless the vehicle was covered by a liability insurance policy, I would hold that Massey was 'required by law to be an INSURED,' despite the fact that other coverage was available to Massey." *Steinberg*, 272 Ill. App. 3d at 85 (Cook, J., dissenting).

Like the court in *Madison Mutual*, the second district held, in *State Farm*, that the test-driver of a car owned by a car dealer was an insured under the Universal garage policy issued to the dealer. While test-driving the car, Rodney Luckhart was involved in an accident. He was an insured under a personal auto policy with State Farm. Again, the issue was whether Luckhart was also an insured under the Universal garage policy. *State Farm*, 285 Ill. App. 3d at 117-18.

The *State Farm* court acknowledged the conflict between *Madison Mutual* and *Steinberg* and decided that *Madison Mutual* was the better decision. Like the *Madison Mutual* court, it concluded that Luckhart was "required by law to be an INSURED" because, when

he was test-driving the dealer's vehicle, Illinois law required him to be covered by liability insurance. The *State Farm* court also agreed with the *Madison Mutual* court's conclusion that Universal's interpretation of its policy improperly equated the words "required by law" with the terms "requiring or needing insurance." The court noted that, had Universal wished to limit its coverage to those permissive users without adequate insurance, it could have made this distinction. *State Farm*, 285 Ill. App. 3d at 120, 121.

The *State Farm* court rejected the *Steinberg* court's interpretation of the policy because it believed that the "fine, artificial line" this court drew could "lead to unreasonable and possibly absurd results that would weaken the purpose of the insurance requirement under the [Vehicle] Code." *State Farm*, 285 Ill. App. 3d at 122.

The *State Farm* court also supported its decision with public policy reasons. It stated that the purpose of the mandatory insurance requirements was to protect the public and not to protect another insurance company. It concluded that it was not unreasonable to hold Universal primarily liable for insurance coverage during a test-drive because, although Universal receives no premiums from the test-driver, the car dealer benefits from the test-drive by increasing the chance of a purchase. Although Illinois law does not require car dealers to furnish insurance coverage to customers using their autos, to distinguish between customers with insurance and those without would lead to unreasonable and absurd results under Universal's garage policy. *State Farm*, 285 Ill. App. 3d at 120-22.

■ Based on *Madison Mutual* and *State Farm*, we conclude that Griffin was an insured according to the definition in the Universal policy. Courts should not distort the meaning of words in a policy to reach a desired result, and they should not search for or create ambiguities where there are none but should interpret the policy as a whole and according to the plain, ordinary, and popular meaning of its language. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 371, 522 N.E.2d 758 (1988).

In *Madison Mutual* and *State Farm*, the courts adhered to this rule of construction by enforcing the language "required by law to be an INSURED" according to its plain and ordinary meaning. The flaw in Universal's argument is that it interprets this language as if it reads "required by law to be an INSURED *under the dealer's policy.*" The plain language of the policy definition, however, does not specify that the permissive user be required by law to be an insured *under the dealer's policy.* Consequently, a permissive user is an insured under the Universal policy if the user is required by law to be an insured under any policy. Because Illinois law requires permissive

users to have insurance, permissive users are "required by law to be an INSURED" and are, therefore, insureds under the Universal policy.

Universal could have drafted its definition of an insured such that, to fall within this definition, permissive users must be required by law to be insured *under the Universal policy*. Universal, however, did not limit its policy definition in this manner. As a result, the fact that Illinois law does not require owners or dealers to provide insurance for permissive users is irrelevant. As the *Madison Mutual* and *State Farm* courts correctly concluded, the definition includes permissive users who are required by law to be an insured under *any* policy, and Illinois has such a requirement in section 7—601 of the Vehicle Code.[2]

Like Universal's interpretation of the policy, the *Steinberg* court's interpretation is at variance with the plain language of the policy. The *Steinberg* court concluded that permissive users with their own insurance are not insureds under the Universal policy. The policy definition of an insured, however, does not distinguish between permissive users with their own insurance and those without their own insurance. Contrary to the *Steinberg* court's conclusion, the words "required by law to be an INSURED" do not contain such a distinction. Regardless of whether permissive users have their own insurance, under section 7—601 they are "required by law to be an INSURED." Whether they have their own insurance merely demonstrates whether they have met this requirement. For these reasons, we choose not to follow *Steinberg*. Instead, we follow the *Madison Mutual* and *State Farm* decisions because these decisions are consistent with the plain language of the policy. Based on the reasoning in these cases, we hold that Griffin was an insured under Universal's policy.

Allstate argues that we may also find that Griffin was an insured under the Universal policy if we find that Universal's policy definition is ambiguous. Allstate relies on the rule that ambiguities in a policy will be construed against the insurer and in favor of the insured. See *National Discount Shoes, Inc. v. Royal Globe Insurance Co.*, 99 Ill. App. 3d 54, 60, 424 N.E.2d 1166 (1981).

A court will not search for an ambiguity, however, where none

---

[2]Universal argues that section 7—601 does not apply in this case because car dealers are exempt from this statute under section 7—601(b)(6). We reject this argument because the issue in this case is not whether section 7—601 required *Howard* to be an insured; rather, the issue is whether this provision required *Griffin* to be an insured.

exists (*Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993)), and a policy term is not ambiguous merely because the parties can suggest creative possibilities for its meaning (*Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529, 655 N.E.2d 842 (1995)). Despite the parties' differing interpretations of the policy, we believe that the Universal policy definition of an insured is not ambiguous. As we have explained, the plain language of this definition provides coverage in states with statutes requiring permissive users to be "an INSURED," that is, to be insured.

Allstate asserts that a Pennsylvania court in another jurisdiction has held that the Universal definition of an insured is ambiguous. See *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 441 Pa. Super. 446, 456, 657 A.2d 1252, 1257 (1995), *appeal granted*, 544 Pa. 613, 674 A.2d 1075 (1996). The court in the Pennsylvania *State Farm* case construed the ambiguity it found against Universal and, therefore, held that the permissive user of the dealer's car was an insured under the dealer's policy with Universal. *State Farm*, 441 Pa. Super. at 457, 657 A.2d at 1257.

The Pennsylvania case does not support a conclusion in this case that the policy definition is ambiguous. First, we note that the Pennsylvania Supreme Court has granted an appeal in that case. Also, although the policy language in that case is the same as the language in this case, the state mandatory insurance law is different. The Pennsylvania court's finding that the definition was ambiguous was based on the fact that the court could not determine by reference to Pennsylvania law who was "required by law to be an INSURED." Unlike Pennsylvania law, Illinois law permits us to determine who was "required by law to be an INSURED," and we do not believe that the policy definition was ambiguous in this case. Moreover, we find it significant that, in *Madison Mutual*, *Steinberg*, and *State Farm*, Illinois courts have found no ambiguity in the policy definition.

In addition to challenging the circuit court's conclusion that Griffin was an insured under its policy, Universal contends that the circuit court erred in finding that it must contribute to her coverage on a *pro rata* basis and that the limits of its policy were $100,000/ $300,000. Universal relies on the following "other insurance" provision in its policy:

> "OTHER INSURANCE—The insurance afforded by this Coverage Part is primary, except it is excess:
> \*\*\*
> (2) for any person or organization who becomes an INSURED under this Coverage Part as required by law."

Universal also relies on another policy provision that limits its liability in the event there is other insurance:

"THE MOST WE WILL PAY—*** [T]he most WE will pay is: 1. ***

With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted."

Universal argues that, under these provisions, it owes Griffin no coverage. It claims that the limits of its coverage are $20,000/$40,000 because these are the minimum limits section 7—601 requires. See 625 ILCS 5/7—601, 7—203 (West 1992). According to Universal, section 7—601 rather than section 5—501(b)(6) provides the limits of its coverage because the former is the section under which Griffin is a person "required by law to be an INSURED."

Given the $20,000/$40,000 limits, Universal argues that it owes Griffin no coverage because its policy requires it to provide coverage only when other insurance is insufficient to provide the $20,000/$40,000 minimum coverage, and the limits of the Allstate policy were greater than $20,000/$40,000. Universal acknowledges that Allstate also has an excess insurance clause, but it argues that its policy does not apply in this case because its policy limits do not exceed Allstate's policy limits.

Allstate responds that Universal's "other insurance" clauses conflict with the following "excess clause" in the Allstate policy:

"If a person insured is using a substitute private passenger **auto** or a non-owned **auto, our** liability insurance will be excess over other collectible insurance. If more than one policy applies to an accident involving **your** insured **auto, we** will bear **our** proportionate share with other collectible liability insurance." (Bold in original.)

According to Allstate, the "other insurance" clauses in the Universal policy constitute an "escape clause," and courts have refused to enforce escape clauses in car owner's policies when the clauses conflict with an excess clause in the driver's policy. In these cases, the courts have held that the owner's insurer is primarily liable. See, e.g., *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London,* 34 Ill. 2d 424, 428-29, 216 N.E.2d 665 (1966).

Alternatively, Allstate asks us to affirm the circuit court's *pro rata* assignment of liability. Allstate argues that, when two applicable insurance policies have conflicting excess clauses, the clauses negate

each other, and courts require the insurers to contribute to liability on a *pro rata* basis. These cases support the circuit court's ruling in this case. Allstate also supports the circuit court's holding that the limits of Universal's coverage for Griffin are $100,000/$300,000. According to Allstate, these should be the limits of Griffin's coverage because they are the minimum limits for the coverage Illinois requires new car dealers to maintain.

In determining which insurer in this case is responsible for coverage and in what amount, the decisions in *Madison Mutual, Steinberg,* and *State Farm* offer little guidance. In *Madison Mutual,* the court affirmed the circuit court's decision that the Universal policy provided primary coverage. It did not discuss this issue, however, and the opinion does not indicate that Universal argued that its coverage was not primary. Universal did argue that the limits of its coverage should be the amount required in the Illinois Vehicle Code, but the court refused to address this issue because the circuit court had not decided it. *Madison Mutual,* 251 Ill. App. 3d at 17.

The *Steinberg* court's discussion of Universal's responsibility for coverage and its policy limits is of limited value because it is *dicta.* After holding that Massey was not an insured under the Universal policy, the *Steinberg* court commented that, had it found coverage under the Universal policy, it would have found that the limits of this coverage were $20,000/$40,000 pursuant to section 7—601, not $100,000/$300,000 as the circuit court had found. The court further stated that it disagreed with the *Madison Mutual* court's view that Universal should be the primary insurer of permissive users. The *Steinberg* court said that Illinois law and the Universal policy do not require this. *Steinberg,* 272 Ill. App. 3d at 83-84.

In his dissent, Justice Cook agreed that Universal's policy limits should be $20,000/$40,000. He disagreed, however, that Universal's policy should be excess. He noted that the State Farm policy stated that it was excess and that the general rule seemed to be to hold the garage policy primary. *Steinberg,* 272 Ill. App. 3d at 84-86 (Cook, J., dissenting).

In *State Farm,* the court acknowledged that both State Farm and Universal had argued that their policies provided only excess coverage. Based on the public policy considerations on which it based the first part of its decision, the court held that Universal would be primarily liable for the $9,092.15 for which coverage was sought. Although it disagreed with State Farm's assertion that Universal's coverage language was illusory, it concluded that "to accept the expressed intention of the parties to [the Universal policy] would be inconsistent with the public policy of the State of Illinois and could

ultimately lead to an unreasonable and absurd result." *State Farm*, 285 Ill. App. 3d at 123. The court stated that it was not necessary to address whether the Universal policy limits are $20,000/$40,000 or $100,000/$300,000 because the amount at issue was significantly below both amounts. *State Farm*, 285 Ill. App. 3d at 123.

In determining Allstate's and Universal's responsibility for Griffin's coverage, therefore, we do not rely on *Steinberg* or on the *Madison Mutual* and *State Farm* decisions holding Universal primarily liable. The *Steinberg* court's discussion of this issue was *dicta*. The court in *Madison Mutual* did not address this issue, and therefore its affirmance of the circuit court on this issue is unsupported by any citation to authority or reasoning. Although the court in *State Farm* supported its holding with public policy reasons, we choose not to base our decision on these concerns. Instead, several courts have held that the proper basis for a determination of whether a policy provides primary or excess coverage is an examination of the "other insurance" clauses in the applicable policies. See, *e.g.*, *Home Indemnity Co. v. General Accident Insurance Co.*, 213 Ill. App. 3d 319, 322, 572 N.E.2d 962 (1991).

The parties in this case correctly focus their arguments on the language of the "other insurance" clauses in their respective policies. Universal essentially asks us to enforce the "other insurance" provisions contained in its policy despite the conflict with similar provisions in the Allstate policy. This conflict, however, prevents us from excusing Universal from its responsibility for Griffin's coverage.

Allstate correctly argues that, when an escape clause in an owner's policy conflicts with an excess clause in the driver's policy, courts will not enforce the owner's policy's escape clause and will hold the owner's insurer primarily liable. See *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London*, 34 Ill. 2d 424, 430-31, 216 N.E.2d 665 (1966). However, Allstate is incorrect in its argument that the "other insurance" provisions in Universal's policy contained an escape clause.

■ This court recently explained the difference between an escape clause and an excess clause:

> "An excess clause 'allows coverage only "over and above" other insurance'; an escape clause 'holds the policy null and void with respect to any hazard as to which other insurance exists.' " *Home Insurance Co. v. Liberty Mutual Insurance Co.*, 266 Ill. App. 3d 1049, 1052, 641 N.E.2d 855 (1994), quoting *Putnam v. New Amsterdam Casualty Co.*, 48 Ill. 2d 71, 76, 269 N.E.2d 97 (1970).

The "other insurance" provisions of Universal's policy do not contain an escape clause because they do not void coverage in the event an-

other policy applies. Rather, they contain an "excess-escape" clause because they obligate Universal to provide coverage only to the extent that its own limits exceed the limits of other available insurance. See *McDonald v. Country Mutual Insurance Co.*, 133 Ill. App. 3d 89, 93, 478 N.E.2d 571 (1985). The first paragraph of the "other insurance" provision in the Allstate policy does not contain a similar limitation, and, therefore, it is an excess clause.

■ Where an excess clause conflicts with an excess-escape clause, a court will not refuse to enforce the excess-escape clause and hold the insurer whose policy contains the clause primarily liable. *Padilla v. Norwegian-American Hospital, Inc.*, 266 Ill. App. 3d 829, 836-37, 641 N.E.2d 572 (1994). In these cases, a court will instead prorate liability between the insurers. *Padilla*, 266 Ill. App. 3d at 837-88.

■ The excess clause in the Allstate policy is incompatible with the excess-escape clause in the Universal policy. The excess clause in the Allstate policy states that the policy's coverage is excess under the circumstances in this case. Likewise, the excess-escape clause in the Universal policy states that the policy is excess under the circumstances of this case. Consequently, as the circuit court found, a proration of liability is appropriate.

A decision that liability should be prorated requires us to decide the basis of the proration. Universal and Allstate both assert that the circuit court decided that liability should be prorated according to the policy limits of the respective policies.

There is authority for dividing liability equally among insurers in circumstances similar to those presented in this case. See, *e.g.*, *Continental National America Insurance Co. v. Aetna Life & Casualty Co.*, 186 Ill. App. 3d 891, 898, 542 N.E.2d 954 (1989); *Continental Casualty Co. v. Travelers Insurance Co.*, 84 Ill. App. 2d 200, 207, 228 N.E.2d 141 (1967). There is also authority, however, for prorating liability according to the respective policy limits of the insurers. See, *e.g.*, *Continental Casualty Co. v. New Amsterdam Casualty Co.*, 28 Ill. App. 2d 489, 497-98, 171 N.E.2d 406 (1960).

In this case, liability should be prorated according to the policy limits rather than equally divided between Allstate and Universal. First, the parties agree that this is the proper basis for apportioning liability. Second, the "other insurance" provision in the Allstate policy suggests that proration should be according to the policy limits:

"If more than one policy applies to an accident involving **your**

insured **auto, we** will bear **our** proportionate share with other collectible liability insurance." (Bold in original.)[3]

Finally, by prorating liability according to the policy limits rather than on an equal basis, we impose liability in a manner consistent with the amounts of coverage for which the parties contracted in the respective policies. This approach seems preferable to one under which an insurer with policy limits significantly less than those of another insurer must share liability equally because of incompatibility in the "other insurance" provisions of the respective policies. See *De los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358, 553 N.E.2d 301 (1990) (in construing an insurance policy, the function of the court is to ascertain and give effect to the intention of the parties as expressed in the insurance agreement).

Although we hold that the circuit court correctly decided to prorate liability between Allstate and Universal according to their respective policy limits, we find that the circuit court erred in its determination that Universal's policy limits with respect to Griffin's coverage are $100,000/$300,000. Courts should examine an insurance policy as a whole and interpret words according to their plain, ordinary, and popular meanings. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 725-26, 648 N.E.2d 1099 (1995). Applying these rules of construction to Universal's policy leads to the conclusion that the minimum limits provision that governs the policy limits with respect to Griffin's coverage is section 7—601.

According to the "MOST WE WILL PAY" provision of Universal's policy, "[w]ith respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place." The words "such law" plainly refer to the law referenced earlier in the sentence, which is the law under which a person is required to be an insured, in this case, section 7—601(a) of the Vehicle Code. The phrase "minimum limits provision of such law," therefore, refers to the minimum limits provision of section 7—601. The minimum limits provision of section 7—601 is section 7—203, which provides limits of $20,000 per person, $40,000 per accident, and $15,000 for destruction of property. These should be the limits of Universal's coverage with respect to Griffin.

Allstate contends, however, that the limits of Universal's coverage are $100,000/$300,000 because section 5—101(b)(6) of the Vehicle

---

[3]Included in the Allstate policy definition of "insured auto" is an auto the insured temporarily uses while her auto is being serviced.

Code requires new car dealers to carry insurance with these greater limits. Section 5—101, however, is not the law under which Griffin was required to be an insured. Its minimum limits provision does not, therefore, govern the limits of Universal's coverage with respect to her, although these greater limits would apply to Universal's coverage of Howard.

We affirm the circuit court's decision that Griffin was an insured under Universal's policy and that Universal and Allstate must share liability in proportion to their applicable policy limits. We reverse the circuit court's decision that the limits of Universal's coverage for Griffin are $100,000/$300,000 and hold that these limits are $20,000/$40,000.

We recognize that the record contains no evidence of the amount of fees and costs Allstate incurred in defending Griffin or the amount, if any, of a judgment or settlement in the Lubow suit. Also, the only evidence in the record of the limits of the Allstate policy is the statement of Allstate's counsel that she believed these limits were $50,000/$100,000. The parties do not dispute these amounts, however, and, therefore, we believe our decision may be enforced without a determination of these amounts.

Affirmed in part; reversed in part.

RAKOWSKI and McNULTY, JJ., concur.