735 N.E.2d 1032 (2000)
316 Ill. App.3d 161
249 Ill.Dec. 207
COUNTRY MUTUAL INSURANCE COMPANY, as Subrogee of David Evans, Plaintiff-Appellee,
v.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Appellant.
No. 3-99-0686.
Appellate Court of Illinois, Third District.
September 1, 2000.
Rehearing Denied September 25, 2000.
*1033 Stephen L. Corn (argued), Kristine M. Tuttle, John F. Watson, Craig & Craig, Mattoon, for Universal Underwriters Insurance Company.
Michael J. Holt (argued), Quinn, Johnston, Henderson & Pretorius, Springfield, for Country Mutual Insurance Company.
Justice LYTTON delivered the opinion of the court:
Country Mutual Insurance Company (Country Mutual) filed suit against Universal Underwriters Insurance Company (Universal), seeking reimbursement of funds expended defending David Evans, who was involved in a traffic accident while test driving a vehicle owned by Mike Murphy Ford (Ford) and insured by Universal. Country Mutual, as Evans' personal insurance carrier, alleged that Universal had primary liability because Evans was driving a third party vehicle at the time of the accident. Country Mutual filed a motion for summary judgment, which the trial court granted. Universal appeals, claiming that (1) Country Mutual's coverage of Evans is "co-primary;" (2) Country Mutual is liable for a pro rata share of the defense; and (3) its policy limits are $20,000 per person, $40,000 per occurrence and $15,000 for property damage. We affirm.

I. FACTS

Evans was involved in an automobile accident while test driving a vehicle owned by Ford. His liability insurance with Country Mutual contained an "other insurance" clause, which stated that "any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance." (Emphasis in original.) The vehicle driven by Evans at the time of the accident was insured by *1034 Universal through a garage liability insurance policy issued to Ford. Ford's policy provided that the most Universal "will pay" for a claim arising from a customer accident "is that portion of such limits needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place." (Emphasis in original.)
Evans attempted to tender his defense of the underlying personal injury and property damage claims to Universal, but Universal refused to defend him. Country Mutual subsequently defended Evans under a reservation of rights against Universal. Country Mutual settled the claims against Evans for $49,808.13, and then sued Universal for reimbursement.
The parties filed cross-motions for summary judgment. The trial court granted Country Mutual's motion and denied Universal's motion, holding that (1) Universal's coverage was primary; (2) Country Mutual's coverage was excess; and (3) Universal's policy provided Evans with coverage in the amount of $100,000 per person and $300,000 per occurrence. Universal appeals.

II. ANALYSIS

Summary judgment is proper when the pleadings, affidavits and other evidence establish, when viewed in a light most favorable to the nonmovant, that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Pennsylvania Life Insurance Co. v. Pavlick, 265 Ill.App.3d 526, 529, 202 Ill.Dec. 424, 637 N.E.2d 1160, 1162 (1994). When a trial court grants summary judgment, we review de novo. Courson v. Danville School District No. 118, 301 Ill.App.3d 752, 755, 235 Ill.Dec. 98, 704 N.E.2d 447, 449 (1998).

A.
Universal admits that it had primary liability for the accident involved here, but it claims that Country Mutual's policy also provided primary coverage. Citing Universal Underwriters Insurance Group v. Griffin, 287 Ill.App.3d 61, 222 Ill.Dec. 522, 677 N.E.2d 1321 (1997), Universal claims that coverage by the two insurance companies should be deemed "co-primary," and damages should be prorated between them based on policy limits. Country Mutual responds that its policy only allowed for excess coverage.
Primary liability is generally placed on the insurer of an automobile rather than on the insurer of a driver. State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill.2d 240, 246, 231 Ill.Dec. 75, 695 N.E.2d 848, 851 (1998); Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co., 305 Ill.App.3d 417, 421, 238 Ill.Dec. 566, 711 N.E.2d 1227, 1230 (1999). Thus, a garage liability insurer has responsibility for providing primary coverage to customers test driving an automobile dealer's vehicles. State Farm Mutual Automobile Insurance Co., 182 Ill.2d at 245-246, 231 Ill.Dec. 75, 695 N.E.2d at 851; Pekin Insurance Co., 305 Ill.App.3d at 421, 238 Ill.Dec. 566, 711 N.E.2d at 1230.
Here, Universal must provide primary coverage to Evans as a customer test driving a vehicle owned by Ford. See State Farm Mutual Automobile Insurance Co., 182 Ill.2d at 245-246, 231 Ill.Dec. 75, 695 N.E.2d at 851; Pekin Insurance Co., 305 Ill.App.3d at 421, 238 Ill.Dec. 566, 711 N.E.2d at 1230. Nothing alleged to exist in Evans' personal automobile insurance policy can be construed as allowing co-primary coverage for an accident occurring under these circumstances. On the contrary, the policy that Country Mutual issued to Evans stated that "any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance." (Emphasis in original.) The language contained in Country Mutual's policy is consistent with the supreme court's analysis in State Farm Mutual Automobile Insurance Co., where the court noted "that pursuant to custom in *1035 the insurance industry, primary liability is generally" not placed on the insurer of the driver of a vehicle; rather, liability is placed upon the insurer of the automobile. 182 Ill.2d at 246, 231 Ill.Dec. 75, 695 N.E.2d at 851.
Universal's argument for co-primary coverage, premised on Griffin, does not persuade. In Griffin, the court addressed which insurance company, that of an automobile dealership or that of a test driver, provided primary coverage for an accident involving a test driver. 287 Ill.App.3d at 74-75, 222 Ill.Dec. 522, 677 N.E.2d at 1330-1331. Because neither policy in that case could be construed as providing primary liability, the court reasoned that the insurers should share liability. Griffin, 287 Ill.App.3d at 75, 222 Ill.Dec. 522, 677 N.E.2d at 1331. Griffin, however, was decided before our supreme court's decision in State Farm Mutual Automobile Insurance Co., finding that regardless of the language in a dealership policy, its insurer's liability is always primary (182 Ill.2d at 246, 231 Ill.Dec. 75, 695 N.E.2d at 851); thus, the analysis in Griffin is inapplicable here. See also, Browning v. Plumlee, 316 Ill.App.3d 738, 249 Ill.Dec. 930, 737 N.E.2d 320 (2000). Accordingly, Universal's argument must fail.

B.
Ford's garage liability insurance policy provides that the most Universal "will pay" for a claim arising from a customer accident "is that portion of such limits needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place."
Universal argues that sections 7-317(b)(3) and 7-601 (a) of the Illinois Vehicle Code (Code) (625 ILCS 5/7-317(b)(3), 7-601(a) (West 1996)), establish the minimum amount of coverage that it was required to provide Evans, i.e. $20,000 per person, $40,000 per occurrence and $15,000 for property damage. See Griffin, 287 Ill.App.3d at 76-77, 222 Ill.Dec. 522, 677 N.E.2d at 1332. According to Universal, Country Mutual must pay any additional liability.
Country Mutual responds that the minimum amount of insurance coverage required for a test driver at a car dealership is $100,000 per person, $300,000 per occurrence and $50,000 for property damage, mandated by section 5-101(b)(6) of the Code (625 ILCS 5/5-101(b)(6) (West 1996)). See John Deere Insurance Co. v. Allstate Insurance Co., 298 Ill.App.3d 371, 377-379, 232 Ill.Dec. 544, 698 N.E.2d 635, 639-640 (1998).
Statutory language should be given its plain and ordinary meaning. Cremer v. City of Macomb Board of Fire and Police Commissioners, 281 Ill.App.3d 497, 499, 217 Ill.Dec. 271, 666 N.E.2d 1209, 1210 (1996). The goal of statutory construction is to effectuate the language and intent of the legislature. People v. Frieberg, 147 Ill.2d 326, 345, 168 Ill.Dec. 108, 589 N.E.2d 508, 517 (1992). Where there exists a general and a specific statutory provision relating to the same subject, the specific provision should be applied. People v. Villarreal, 152 Ill.2d 368, 379, 178 Ill.Dec. 400, 604 N.E.2d 923, 928 (1992). Statutory construction is a question of law. Branson v. Department of Revenue, 168 Ill.2d 247, 254, 213 Ill.Dec. 615, 659 N.E.2d 961, 965 (1995).

1.
In Griffin, the First District Appellate Court held that section 7-601(a) of the Code (625 ILCS 5/7-601(a) (West 1996)), establishes the minimum amount of insurance that a car dealership must provide its test drivers. 287 Ill.App.3d at 76, 222 Ill.Dec. 522, 677 N.E.2d at 1332. Section 7-601(a) states: "no [automobile] owner shall permit another person to operate * * * a motor vehicle * * * unless the motor vehicle is covered by a liability insurance policy." The minimum amount of liability insurance required by section 7-601(a) is $20,000 per person, $40,000 per *1036 occurrence and $15,000 for property damage. See 625 ILCS 5/7-203 (West 1996).
A different panel of the First District Appellate Court subsequently rejected the application of section 7-601(a) to car dealerships. See John Deere Insurance Co., 298 Ill.App.3d at 378-379, 232 Ill.Dec. 544, 698 N.E.2d at 639-640. There, the court held that section 5-101(b)(6) of the Code, not section 7-601(a), governs minimum liability coverage that a garage liability insurance policy must provide to a customer test driving a vehicle. John Deere Insurance Co., 298 Ill.App.3d at 377-379, 232 Ill.Dec. 544, 698 N.E.2d at 639-640. We agree.
Section 5-101, specifically applicable to new car dealers, provides:
"(a) No person shall engage in this State in the business of selling or dealing in, on consignment or otherwise, new vehicles * * * unless licensed to do so in writing by the Secretary of State under the provisions of this section.
(b) An application for a new vehicle dealer's license shall be filed with the Secretary of State * * * and shall contain:
* * *
6. A statement that the applicant has complied with the appropriate liability insurance requirement. * * * The policy must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property." (Emphasis added.) 625 ILCS 5/5-101(a), (b)(6) (West 1996).
Section 5-102(b)(4) of the Code (625 ILCS 5/5-102(b)(4) (West 1996)), applicable to dealers of used vehicles, contains an identical provision to section 5-101(b)(6).
Although section 7-601(a) also sets minimum requirements for automobile insurance, that section is general in nature. On the other hand, sections 5-101(b)(6) and 5-102(b)(4) specifically address insurance requirements of car dealerships. The plain language of sections 5-101(b)(6) and 5-102(b)(4) establishes minimum liability requirements for car dealerships; these provisions apply whether the driver of a dealership vehicle is an employee or a customer/permissive user. John Deere Insurance Co., 298 Ill.App.3d at 377-378, 232 Ill.Dec. 544, 698 N.E.2d at 639-640. Thus, as specific statutory provisions, sections 5-101(b)(6) and 5-102(b)(4) must be given effect over the more general obligations under section 7-601(a). See Villarreal, 152 Ill.2d at 379, 178 Ill.Dec. 400, 604 N.E.2d at 928; John Deere Insurance Co., 298 Ill.App.3d at 377-379, 232 Ill.Dec. 544, 698 N.E.2d at 639-640.
Furthermore, section 7-601(b) limits the applicability of section 7-601(a); it provides that certain "vehicles are exempt from the requirements of this section." See 625 ILCS 5/7-601(b) (West 1996). Exempted are vehicles "complying with laws which require them to be insured in amounts meeting or exceeding the minimum amounts required by this Section." See 625 ILCS 5/7-601(b)(6) (West 1996). Here, Ford's vehicle is exempt under section 7-601(b)(6) because it is insured in an amount exceeding the minimum amounts required by section 7-601(a). See 625 ILCS 5/5-101(b)(6), 5-102(b)(4) (West 1996). Accordingly, section 7-601(a) does not apply to this case.

2.
We also reject Universal's contention that section 7-317, contained within article III of the Code, establishes the minimum liability limits for car dealerships.
Article III requires "proof of financial responsibility * * * with respect to persons whose driver's licenses or driving privileges have been revoked * * * or who have failed to pay judgments amounting to $500 or more as defined by Section 7-303." 625 ILCS 5/7-301 (West 1996); see also State Farm Mutual Automobile Insurance *1037 Co., 182 Ill.2d at 244-245, 231 Ill.Dec. 75, 695 N.E.2d at 850 (the provisions of article III require that certain motorists submit proof of financial responsibility for the future as a condition of enjoying driving privileges.) Section 7-317 merely defines the minimum limits of a "motor vehicle liability policy" required under article III to avoid the loss of driving privileges. See 625 ILCS 5/7-314 through 7-317 (West 1996). Thus, proof of minimum liability requirements, as stated in section 7-317, are inapplicable here.

III. CONCLUSION

The judgment of the circuit court of Tazewell County is affirmed.
Affirmed.
SLATER, P.J., and HOLDRIDGE, J., concur.